L. B. POWELL et al. v. WILLIAM HUNTER et al.;
J. H. POWELL et al., Intervenors, Appellants.

**Division One, April 13, 1914.**

**CONVEYANCE: Refusal to Pay Purchase Price: Possession: Vendor's Lien: Acquiring Outstanding Title.** However defective the title which the vendee acquired from his vendor, if it is the basis of the vendee's title and possession, the law will not permit him to retain possession of the lands and refuse to pay the purchase money. On the other hand if said vendee already had a legal title and took possession thereunder and afterwards took a conveyance of whatever title said vendor had, in order to strengthen his own and while asserting his own to be valid, said vendee is not precluded from setting up his previously acquired title as a defense to an action brought by said vendor to enforce a lien for unpaid purchase money.

Appeal from Butler Circuit Court.—*Hon. Jesse C. Sheppard*, Judge.

AFFIRMED.

*C. G. Shepard* and *Sam J. Corbett* for appellants.

(1) The title of T. C. Powell not being a perfect paper title, the defendant has the right if he so desires to refuse to accept it, but as a condition precedent to his making this kind of a refusal he must restore to the intervenors the possession he acquired from Canady, through intervenors' chain of title. Layon v. Chessney, 186 Mo. 540; Pershing v. Canfield, 70 Mo. 141; Harvey v. Morris, 63 Mo. 477; Cartwright v. Culverm, 74 Mo. 182; Hunt v. Marsh, 80 Mo. 398; Key v. Jennings, 66 Mo. 356; Smith v. Busby, 15 Mo. 388; Mitchell v. McMullen, 59 Mo. 252; Connor v. Eddy, 25 Mo. 72. (2) The defendant is estopped to deny the title through which he obtained possession, even though as against some unknown person the title may be worthless. The common grantor not being the true

owner, as between the two we have only to inquire which one has the title of the grantor. Smith v. Lindsey, 89 Mo. 76; Sells v. McAnaw, 138 Mo. 267. (3) Hunter being a subsequent purchaser from Canady, the grantee of Powell, and the lien in favor of Powell being a matter of record, Hunter stands in Canady's shoes as to this lien. Thompson v. Henry, 85 Mo. 455. (4) It is true the evidence of title is very unsatisfactory, and did we have to rely on the legal title of Powell, then we could understand why the trial court found in favor of the defendant; but to let the defendant retain possession of the land under the Powell title, and permit him to resist the payment of the purchase money on the ground of Powell having no right is in the teeth of every holding by this court on that question. Mill. Co. v. Sugg, 206 Mo. 148; Pratt v. Canfield, 67 Mo. 50.

*Arthur L. Oliver* for respondent.

(1) This court in the Hunter-Powell decision, 204 Mo. 403, held that T. C. Powell was "without shade or shadow of title" to the lands he undertook to convey Cannady. The evidence in this case shows that not a scratch of pen or quill nor one single act of possession or otherwise, ever bore testimony of his title or claim of title; no claim or proof of title was made by intervenors in this case, except an unsupported narrative of antebellum incidents contained in their bill, and which is no evidence in this case. Conceding then, that Hunter had no other title except the Cannady title, will equity, conscience and justice enforce the vendor's lien by specific performance? Would it have done so against Cannady by requiring him to pay his money for a worthless title, and to say the very least, a doubtful title, under his contract calling for a "deed in fee with general warranty?" Luckett v. Williamson, 31 Mo. 54; Wellman v. Dismukes, 42 Mo. 101;

Birge v. Bock, 24 Mo. App. 336; Henyford v. Turner, 67 Mo. 296; Pratt v. Canfield, 67 Mo. 55; Townshend v. Goodfellow, 3 L. R. A. 739; Morgan v. Morgan, 15 U. S. 290; Bank v. Hagener, 26 U. S. 456; Hepburn v. Auld, 9 U. S. 262; Murray v. Ellis, 112 Pa. 485; People v. Bldg. Co., 92 N. Y. 105; Church v. Thompson, 108 N. Y. 618; Hymer v. Branch, 6 Mo. App. 515; Veth v. Gierth, 92 Mo. 97; Paunroy v. Fullerton, 131 Mo. 581. Respondent Hunter neither acquired title nor possession under Cannady, and therefore is not bound by any claim, if any, intervenors may have had against Cannady. When respondent Hunter purchased from Cannady he paid him for 160 acres in section one, the sum of five dollars per acre, aggregating $800. Not one witness by inference or otherwise contradicts this statement of Hunter as to his transaction with Cannady. Did Cannady or Powell, or these intervenors regard the title or possession of Cannady of any value? Cannady up to a short while before his death was telling Powell he would pay him "as soon as he (Powell) made him a deed to the land." Cannady regarded it worthless. Powell assigned to these intervenors his vendor's lien first without any consideration, and lastly for speculative collection, and from 1896 until 1907—eleven long years—they or their assignor made no claim for either pay or possession. Is it equitable now after Hunter has fenced, improved and cleared up this 320 acres, to make him pay seventeen thousand dollars for a "blue sky" title, to this tract when 1920 acres covered by Powell's lien sold for only $1736 or less than one dollar per acre? (2) Respondent Hunter having acquired the true legal title had the right to buy, for the sake of peace, Cannady's claim, or any other, without rendering himself liable for any supposed equity existing against Cannady. The adjudications in this State hold that the vendee may buy up an antagonistic title to that of the vendor, and set up the title so bought to defeat that of the ven-

dor, and so if Hunter could have acquired an outstanding title and asserted it against Cannady, he had the right to acquire such title, and assert it against the alleged grantors of Cannady. Huth v. Carondelet Ry., 56 Mo. 202; Funkhauser v. Lay, 78 Mo. 465; Mocklot v. Dubereil, 9 Mo. 477.

## STATEMENT.

This case was heard on a former appeal (Powell v. Hunter, 204 Mo. 393), when it was reversed and remanded for the reason that the plaintiffs on the former appeal sued to enforce a vendor's lien for unpaid purchase money, without offering in the bill or on the trial to execute a deed to the land. In that case a favorable judgment obtained by the plaintiffs in the court below against several defendants, was partly executed and enforced pending the appeal, for the reason that only one of the defendants prosecuted his appeal, from the judgment below to this court.

After the remand of that case, two other sons of the assignor of the vendor's lien brought an action against the plaintiffs in the original case, alleging among other things, that the assignment of the vendor's lien through which the parties sued claimed, was fraudulently obtained and that they held a prior valid assignment thereof, from their father. This action was tried below and resulted in a judgment in favor of the plaintiffs and a substitution of them to the rights of the former plaintiffs. An appeal was taken and that judgment was affirmed by this court. [Powell v. Powell, 217 Mo. 571.]

Thereupon, the plaintiffs in that suit intervened in the present action which was then pending in the circuit court on the remand by this court on the first appeal, alleging in their intervention that they were entitled to the benefit of the vendor's lien. Upon the trial in the court below, judgment was rendered against

the intervenors, from which judgment they have prosecuted the present appeal.

The facts in this case have been stated in two opinions of this court heretofore delivered and may be summarized, to-wit: On the sixth day of May, 1896, an instrument in writing was executed between Thomas C. Powell and James W. Cannady of New Madrid, Missouri, for the conveyance of a half section of land in section 13, township 17, range 12, and other lands lying in Pemiscot county, Missouri, for the price of five dollars per acre, with a proviso that said Cannady should pay $500 within ten days and the remainder in equal annual instalments with eight per cent. interest, and that he should be credited with the money received by sale of shipments of lumber on the purchase price of the land.

Said instrument further provided for the retention of a lien for the unpaid purchase money, and that the wife of the grantor should join in the conveyance of the land after the cash payment. This contract was acknowledged by T. C. Powell on the sixth day of May, 1896, and by his wife, Anne Powell, on the 24th day of June, 1896, and was duly recorded in Pemiscot County on the 25th day of June, 1896.

It was ruled on the former appeal that this contract was an executory agreement to sell and not an executed deed. The intervenors in their pleading below tender the execution of a deed in case of a decree in their favor.

The testimony adduced on the trial by defendant Hunter tended to prove that the title to the half section of land in controversy was patented by Pemiscot county and through mesne conveyances from the patentee, it was vested in one A. A. B. S. West by a deed from Thomas P. Cooper dated March 9, 1868, and recorded January 25, 1869. Defendant Hunter introduced two quitclaim deeds from the assignees of the heirs of A. A. B. S. West.

The testimony of the brother of this West stated on cross-examination that he was known as A. B. S. West and that he had never known that there were two A's in the initials of his name.

There was testimony tending to show that the said West was a school teacher as well as a surveyor, in Obion county, Tennessee, which lies across the river from Pemiscot county, Missouri, and he seems to have been also in Pemiscot county, Missouri. In the dealings between the West heirs and the parties to whom they quitclaimed, their brother was described as A. A. B. S. West and his name is so written in the acknowledgments thereto.

The nephew of the said W. John Sellers, testified when asked about the double "A" appearing in the initial of his uncle's name, that when witness was a boy "some times they called him Andy or A. A. or A. B., it was either A. A. or A. B., I don't remember whether both A's was in there or not." But this testimony was properly excluded because the deposition containing it, was not signed by the witness.

The intervenors claimed title by a patent from the county to R. B. Turner; that said Turner by oversight or mistake conveyed to J. H. Powell, Sr., instead of his brother T. C. Powell, Sr., who furnished consideration for the deed; that J. H. Powell, Sr., trustee of a resulting trust for his brother, T. C. Powell, Sr., conveyed the title to T. P. Cooper in exchange for Tennessee lands; that Cooper, for some reason, conveyed the land in question to A. A. B. S. West; that when Cooper was called to make good his warranty for the Tennessee lands he delivered back to his grantor, T. C. Powell, Sr., possession of the Missouri lands and all title papers which he had received from him; that T. C. Powell, Sr., and his wife afterwards entered into the above described contract.

The intervenors also gave evidence tending to prove that defendant Hunter purchased the land in con-

troversy, together with other land, from J. W. Cannady, who at the time of such sale was in possession thereof by his tenants who were engaged in cutting timber for a saw mill and that after the purchase by Hunter from Cooper these tenants became the tenants of Hunter.

On the other hand defendant Hunter gave evidence, in substance, that he made the purchase from Cannady for the reason he found Cannady had some claim to some land adjoining the section in which the land in dispute was situated; that in order to "buy his peace" and settle any controversy as to the land in dispute, he included that in the same purchase, paying a lump sum; that before making this purchase from Cannady he had acquired the West title and under it he had gone on the land and deadened the timber, although he knew that there were two men in shacks on the premises at the time who were tenants of Cannady; that Hunter continued in possession of the land so taken by him, until he sold it. On that point the exact language of Hunter is, to-wit: "I include this west half of thirteen in this conveyance merely for the sake of peace. I was in possession at that time under a deed from West; yes, sir. And I never given up or changed that possession; no, sir. Never interrupted that possession until I sold it. Yes, sir; the consideration in the deed is eight hundred dollars, for all the lands embraced therein which is something more than four hundred acres. That was the real consideration—I gave him that and no more." The testimony of this witness was not materially changed on the cross-examination.

At the conclusion of the trial the court rendered a decree in favor of the defendant Hunter and against the intervenors who have prosecuted the present appeal.

## OPINION.

BOND, J. (After stating the facts as above).——

There is only one question in this case, which is, what was the nature of the purchase by Hunter from Cannady of the land in dispute. If that transaction was the basis of Hunter's title to and possession of the lands, then the law will not permit him to retain possession of the lands and refuse to pay the purchase money, however defective the title may be which he acquired from Cannady, who was the grantee of the assignor of intervenors. [Harvey v. Morris, 63 Mo. l. c. 477; Lanyon v. Chesney, 186 Mo. l. c. 555; Smith v. Lindsey, 89 Mo. 76.]

On the other hand if Hunter had the legal title to the land and took possession thereof under that title and afterwards took a conveyance of whatever title Cannady had in order to strengthen his own and while asserting his own to be the valid title; then he is not precluded from setting up that title as a defense to an action brought by the grantor, Cannady, or his representatives, to enforce a lien for unpaid purchase-money under a contract between Cannady and his grantor. [Funkhouser v. Lay, 78 Mo. l. c. 465; Huth v. Carondelet Marine Ry. & Dock Co., 56 Mo. l. c. 206; Macklot v. Dubreuil, 9 Mo. 477.]

We are not prepared to say that intervenors have shown by the clear preponderance of the testimony that the purchase of defendant from Cannady was for the purpose of acquiring a valid title emanating from their father. About eleven years intervened between the contract between him and Cannady before the assertion of that title by anyone. The records of Pemiscot county did not show a clear deraignment of title from it to the father of intervenors. The record title from the county was apparently in A. A. B. S. West and while there is lack of positive evidence that this name had two A's in the initials, yet he was shown to have

been in the vicinity of the land in the prosecution of his business of surveying and the fair effect of the evidence to our minds, is that he was a real person and that the quitclaim from his heirs carried the title which was transferred to him from Pemiscot county. Another circumstance, not without force, as bearing on the conflicting evidence relating to the title of intervenors' grantor, is the clear testimony emanating from the representative of Cannady, and his own declaration when he was alive, that the only reason he had not paid the full price for the land was that his grantor had not made him a title.

The burden of the proof in this case rests upon the intervenors. We are of the opinion that they have not sustained it by the clear preponderance of the testimony which is essential to a rendition of a decree in their favor.

## II.

The contention of the appellants as to the character of the contract between Powell, their father, and Cannady, was resolved against them in the former appeal where it was held that it was an unexecuted agreement and not a deed *in praesenti*.

It follows that the judgment is affirmed. All concur.