discovered, no merger or consolidation or corporate contract is sacred or free from attack years afterwards.

Were it necessary to hold, in a determination of the plaintiff's right to maintain this action, that the plaintiff was estopped from so doing, this court would not hesitate to apply that rule; but testing the facts in this case by the severest test, by casting on the defendants the burden of showing that the transactions were fair and free of taint of fraud, which we do not hold or find to be the rule in this state, we reach the opinion that the defendants have fully and completely refuted the charges made and overcome the burden perhaps unjustly imposed upon them by this court.

It must follow that the plaintiff's petition be and the same hereby is dismissed at her costs, and judgment is entered for the defendants.

*Petition dismissed.*

LEMERT, P. J., and MONTGOMERY, J., concur.

BREYMANN ET AL. *v.* THE PENNSYLVANIA, OHIO & DETROIT RD. CO. ET AL.

BREYMANN ET AL. *v.* THE PENNSYLVANIA, OHIO & DETROIT RD. CO.

ROONEY ET AL. *v.* THE PENNSYLVANIA, OHIO & DETROIT RD. CO.

(Decided June 20, 1932.)

Messrs. *Ritter & Brumback* and *Mr. George E. Taylor,* for plaintiffs in error.

Messrs. *Fraser, Hiett, Wall & Effler,* for defendants in error.

Lloyd, J. In above actions commenced in the court of common pleas, it was sought to recover damages for the destruction by fire on June 8, 1926, of four dredges and three tugboats owned by the plaintiffs in error. Rooney owned a joint interest in one of the dredges, called the Birckhead; the remaining interest therein and all of the other property being owned by the Breymanns.

The dredges and tugboats were moored on river property which was owned by the Pennsylvania, Ohio & Detroit Railroad Company, an Ohio corporation, and was located adjacent to its right of way. This property and right of way were leased to the Pennsylvania Railroad Company, a Pennsylvania corporation. The right of way, in conjunction with a bridge across the Maumee river, was used by the lessee company in the operation of its trains. The Pennsylvania Railroad Company sublet to the Breymanns the property whereon the dredges and boats were moored. The two Breymann actions were consolidated in the court of common pleas and were tried with the Rooney case; the trial resulting in verdicts and judgments for the defendants in error.

All of the actions were based upon Section 8970, General Code, which reads as follows: "Every company, or receiver of such company, operating a railroad or a part of one shall be liable for all loss or damage by fires originating upon the land belonging to it caused by operating such road. Such company, or receiver of such company, further shall be liable for all loss or damage by fires originating on lands adjacent to its land, caused in whole or part by sparks from an engine passing over such railroad, and the exercise by such company, or receiver of such company, of due care in equipping and operating such engine shall not exempt such company, or receiver of such company, from such liability, which may be recovered

before any court of competent jurisdiction within the county in which the lands on which such loss or damage occurs are situated. The existence of fires upon the railroad company's land is *prima facie* evidence that they are caused by operating such railroad. Provided that nothing herein shall invalidate or prohibit contracts of such company or receiver now existing or hereafter made, by which such company or receiver is indemnified against such loss or damage by fire, or liability therefor released.''

The fact that the property of plaintiffs in error herein was destroyed by fire is not in dispute. As stated by counsel for defendants in error, in their brief: ''The single and only question for the jury to determine was this: was the fire ignited on one of the dredges, and which spread to and destroyed all of the craft, caused by the operation of the railroad of the defendant?''

This was the primary question, there remaining, of course, the secondary question of the amount of damages recoverable for the loss, if the jury found the fire to have been occasioned by a spark from a passing locomotive, as was claimed by plaintiffs in error.

As part of their defense, defendants in error called Gilbert A. Young of the engineering department of Purdue University, admittedly an expert on the subject, to describe and give the results of experiments made by him as to how far sparks emitted from locomotives of various types—one or more of which was equipped as was that of defendants in error from which it was claimed the spark that started the fire in question was emitted—would carry and retain sufficient heat to cause ignition of substances upon which they fell, under varying velocities of wind, including that claimed to have existed at the time of the fire. The purpose of Mr. Young's testimony was twofold: First, that above related; and, second, to qualify him as an expert and to elicit by hypothetical questions his

opinion as to whether the property of plaintiffs in error could have been fired by a spark from a passing locomotive of the Pennsylvania Railroad Company, the dredge, upon which it is claimed the sparks fell, having been from 138 to 150 feet distant from the railway tracks. The hypothetical questions asked and answered by Mr. Young related to whether, in his opinion, under the facts assumed in the questions, the dredge fire could have been caused by cinders or sparks emitted from a locomotive of the defendants in error. No objections having been made to these hypothetical questions, nor to the answers thereto, the propriety of the questions as asked and the admissibility of the answers given are not before us. It may not be amiss, however, to suggest that Young, having made a scientific study of the effect of sparks and their vitality, and the distance which they could be carried and cause ignition, was qualified as an expert to testify with respect thereto. *Cleveland, C., C. & St. L. Ry. Co.* v. *McKelvey*, 5 C. D., 561, 12 C. C., 426; *Potter* v. *Grand Trunk Western Ry. Co.*, 157 Mich., 216, 121 N. W., 808, note, 22 L. R. A. (N. S.), 1039; *Pennsylvania Fire Ins. Co.* v. *Ann Arbor Rd. Co.*, 184 Mich., 375, 151 N. W., 578; *Davidson* v. *St. P., M. & M. Ry. Co.*, 34 Minn., 51, 24 N. W., 324.

To rebut the testimony of Young, a Mr. McLaren, who for many years had been in the employ of the United States Forestry Division of the Department of Agriculture, was called as a witness by plaintiff in error, and, to qualify him as an expert on the subject of inquiry, was asked concerning certain experiments in which he had a part, to determine at what distances sparks emitted from locomotives would ignite various described substances. The court refused to permit him to describe these experiments, especially one of them, on the ground that the conditions differed from those of the situation in the instant case. It is true that the conditions were not identical, but plaintiffs

in error sought and offered to prove that the substances used in the experiments would not ignite as freely as the rotted pine of the dredge which it was claimed was ignited by sparks from a locomotive of the Pennsylvania Railroad Company. Neither were the experiments of Young conducted under the identical conditions existing upon the occasion of the fire in question, but the tests described by each of them did tend to show the distances at which sparks or live cinders emitted from locomotives equipped as were those of defendants in error would cause fires, and tended also to show the experience and qualifications of each of them as experts on the subject of inquiry. Although many of the tests and experiments preceded June 8, 1926, by years, yet, since the varying velocities of the wind and the character and carrying power of sparks and live cinders, and their effect upon objects on which they fall, have not changed with time, the testimony of these experts upon this subject was admissible in evidence.

Having held this character of testimony given by Young to have been admissible, it necessarily follows that the testimony of McLaren, tending as it did to rebut the inferences which might be drawn from the testimony of Young, his experiments having been conducted under similar circumstances, was also admissible, and refusing to admit it constituted prejudicial error.

Plaintiffs in error allege that the court erred in refusing to submit to the jury before argument the following written instructions:

"1. If you find by a preponderance of the evidence that the fire which damaged the tugs and dredges originated on Dredge Number 3, that said Dredge Number 3 was at the time located on lands adjacent to land of the defendants, that said fire was caused in whole or in part by sparks from an engine passing over the railroad of the defendants, that said fire

burned property of the plaintiffs, that said fire caused the plaintiffs to suffer loss or damage, then your verdict must be for the plaintiffs."

"2. If you find by a preponderance of the evidence that the plaintiffs suffered loss or damage from a fire originating on a dredge of the plaintiffs located on lands adjacent to the lands of the defendants, caused in whole or in part by sparks from an engine passing over the railroad of the defendants, then you are instructed that your verdict must be for the plaintiffs, even though the defendants, or either of them, did exercise due care in equipping and operating their engines."

At the request of the defendants in error, a special interrogatory was submitted to the jury, viz., "Was the fire ignited by a cinder from a locomotive engine?" The jury answered "No." Defendants in error now say that the refusal of the court to give to the jury before argument the two requested instructions of plaintiffs in error could not have been prejudicial error because of the negative answer of the jury to the above-quoted interrogatory, and because "they did not include the element of proximate cause." It will be observed that Section 8970, General Code, says nothing about "cinders." Just what the jurors may have understood by the word "cinders" might require some speculation, and if they thought of its meaning as a dead or dying spark, if we may so express it, or in the sense we apply the word to cinders that are used for paths and driveways, the answer to the interrogatory might very well have been "No," and, if thus motivated, would have no bearing on the question here in issue, and would not excuse the failure to give to the jury the requested instructions.

The evidence shows that the fire in question either was or was not caused by sparks from a passing locomotive of the Pennsylvania Railroad Company, and if it was so caused "in whole or part," then the defend-

480

ants in error are "liable for all loss or damage." If
the fire originated as claimed by plaintiffs in error,
then Section 8970, General Code, imposes an absolute
liability on defendants in error for the ensuing dam-
age and loss. These requests followed the language
of the statute, and their refusal was prejudicial error.

Defendants in error sought to show that at various
times prior to the occurrence in question "hoboes and
bums" had lighted fires on the shore near the dredges,
and this proffer of testimony was refused, and rightly
so. In his argument to the jury one of-counsel for de-
fendants in error said to the jury: "We know hoboes
were around there, we haven't shown that; the evi-
dence would not be permissible, but there was the
plank to the dredge, there was a cozy cabin, there was
a mattress in there; we know positively that four boys
were smoking on that dredge about twelve o'clock,
over there smoking. I don't know how often they
were on there. We were not permitted to show evi-
dence of what happened on other occasions in this
case."

Counsel for plaintiffs in error thereupon said: "I
don't think this is proper argument, Your Honor."
The court remained silent, while arguing counsel pro-
ceeded: "I am leaving it, just telling that we were
restricted in that point by the rules of law."

Plaintiffs in error claim that to so argue was im-
proper, and that the court should have intervened and
said so to the jury. We also think that this should
have been done. This court has heretofore emphasized
the duty of a trial judge in this regard, and repetition
will serve no good purpose. Suffice it to say, a trial
judge may not remain silent when his attention has
been called to a patent impropriety, however inad-
vertent and unintentional it may have been on the part
of counsel. Unfortunately, righteous motives ex-
pressed in inept words are likely to be misunderstood.
Counsel did not retract what he said, the court re-

mained silent, and it is difficult to say what effect this statement of counsel had upon the minds of the jurors when they came to deliberate upon what the verdict should be. The suggestions made by counsel gave the jury an opportunity to play upon their imaginations as to possibilities that in fact should not have been considered by nor suggested to them, and we are therefore of the opinion that to so argue without retraction by counsel or suggestion by the court as to its impropriety, under the circumstances presented by the record, was prejudicial error.

The other alleged error is that the judgments are manifestly against the weight of the evidence. With this contention we do not agree.

For the reasons given, the judgments of the court of common pleas are reversed, and the causes remanded to that court for new trials.

*Judgments reversed and causes remanded.*

RICHARDS and WILLIAMS, JJ., concur.