## FRANKLIN et v NOVAK

Ohio Appeals, 6th Dist, Lucas Co

Decided Dec 23, 1935

294

Smith, Beckwith, Ohlinger & Froehlich, Toledo, for plaintiffs in error.

Deeds & Cole, Toledo, and Frank A. Carabin, Toledo, for defendant in error.

## OPINION

By CARPENTER, J.

In the trial court the defendant in error, William A. Nowak, who will be referred to herein as plaintiff, recovered a verdict and judgment for $9,500 from the plaintiffs in error, Walter S. Franklin et al, as receivers of The Ann Arbor Railroad Company, who will be called defendant herein. To reverse this judgment, this proceeding in error was instituted.

About 6:30 A. M., January 27, 1932, a collision occurred between an automobile owned and driven by plaintiff, who was then thirty-one years old, and a locomotive of the defendant at a grade crossing where the defendant's railroad crosses Ketcham Avenue in the north part of Toledo. As a result of that collision plaintiff sustained personal injuries and his automobile was badly damaged, for all of which, together with his expenses occasioned by his injuries, he was awarded the above judgment.

Many facts surrounding the collision are undisputed. The locomotive had no cars attached to it, and was being backed from the railroad yards, a half mile north of the crossing, to the defendant's passenger depot some distance to the south. From there it was to take a regular passenger train from Toledo to Frankfort, Michigan, hence, at the time, it was engaged in interstate commerce. Chicago, Rock Island & Pacific Ry. Co. v Wright, 239 U. S., 548, 60 L. Ed., 431, 36 S. Ct., 185.

The rear end of the tender of the locomotive collided with the plaintiff's automobile. It was very cloudy and dark at the time, and there was no headlight upon the rear end of the tender. The automobile. a 1929 Ford sedan, had on it two ordinary headlights, which lighted the street and side ditches about 150 feet ahead. The plaintiff was approaching the crossing from the west. The track to the north was straight for a quarter of a mile or more.

About 75 feet west from the track of the defendant there were two tracks of the Toledo Terminal Railroad, which ran parallel with that of the defendant. Between the tracks of the two railroads the ground was quite level, and there was no object to the north to obstruct the view of plaintiff from his automobile as he approached the crossing from the west.

The plaintiff at that time was engaged as a retail salesman for a tea company. He lived about ten blocks from the crossing and was familiar with it, having at times passed over it two or three times a day. The pavement on Ketcham Avenue ended three or four hundred feet west of the first tracks of the Terminal railroad, and that space was slightly down grade to the crossings, and was a rough, cinder road to and over both crossings. East of the Ann Arbor Railroad crossing the ground and street were up-grade.

Plaintiff's claims of negligence are that the locomotive was operated in a backward movement without signals by bell or whistle; that defendant neglected to keep a lookout, or have its engine under control, or to stop or slacken its speed, or to keep proper lighting equipment on the rear of the locomotive.

The plaintiff was his only eye witness to what occurred before and at the time of the collision. He testified that it "was very cloudy and foggy, dark, pitch dark"; that he stopped his automobile, which had the window to his left down six inches, four feet from the defendant's crossing, and looked and listened, and, neither seeing nor hearing any train, signals or other warning, proceeded across the track and was struck; that the left three-quarters of his automobile was smashed in and it came to rest across the roadway to his right and on the west side of the track.

The defendant offered as eye witnesses its engineer and fireman and a man who testified that he was on the Terminal railroad track a half block west of Ketcham Avenue at the time of the collision and heard it. All of these said the bell was ringing, and that the usual statutory crossing whistle signal was sounding as the locomotive approached the crossing. The trainmen said at that time they were traveling 5 or 6 miles per hour. The engineer said he did not see the automobile approaching the crossing, but the fireman and the other witnesses said they did, and that it did not stop. The fireman said when he realized the automobile was not going to stop, he signaled the engineer, who immediately applied the emergency brakes, and

that at this time the back of the tender was 20 or 25 feet north of the crossing, and that when it stopped the front of the engine was clear of the south side of the roadway.

On inspection, the engineer and fireman found a mark on the left end of the rear pilot beam of the tender, and the iron step attached to it was bent in under the tank. They also testified that there were two ordinary hand oil lanterns, lighted and hanging on the upper part of the rear corners of the tender, one giving a white light and the other a red; that these lights could be seen for a quarter of a mile in the direction they were moving, but that they did not illuminate any distance ahead of them. These witnesses said it was very dark and cloudy, but denied it was misty or foggy, as stated by plaintiff.

One of the main questions involved in several of the alleged errors asserted by the defendant relates to the effect of the ru'e of the Interstate Commerce Commission with reference to whether a rear headlight was required on that locomotive. The rule referred to is No. 129, adopted by the commission under authority of the Federal Boiler Inspection Act, Title 45, §§22 to 34, U. S. Code. That rule, after specifying what a headlight shall be and do, provides:

"(b) Each locomotive used in road service, which is regularly required to run backward for any portion of its trip, except to pick up a detached portion of its train, or in making terminal movements, shall have on its rear a headlight which shall meet the foregoing requirements." 2 Roberts Federal Liabilities of Carriers (2d Ed.), 2063.

At the trial it was conceded by counsel for plaintiff that this locomotive at the time was engaged in interstate commerce and was "making a terminal movement" and hence was not required by this rule to carry a rear headlight. In Napier v Atlantic Coast Line Rd. Co., 272 U. S., 605, 71 L. Ed., 432, 47 S. Ct., 207, it is settled that such rule supersedes the state law specifying requirements as to such equipment when used in interstate commerce. And in **New York Central & St. L. Rd. Co. v Van Dorp, 36 Oh Ap, 530 (8 Abs 671), 173 NE 445**, this court held it must take judicial notice of said rule and that it controls as to headlights, and not the state law, §8945-1, GC. Hence, we conclude that the admitted failure of the defendant to display a lighted headlight on the rear of the locomotive was not negligence per se, as would have been true under the state law, if that were applicable. However, that rule did not excuse the defendant from its common-law duty to exercise ordinary care for the safety of persons lawfully on the highways it crossed as it operated that backing movement of its locomotive.

Compliance with the statutory requirement, or lack of requirement, as to light did not end the duty of the defendant, and this is true as to any other such requirement as signals by bell and whistle. This proposition was laid down by the Supreme Court of the United States in Grand Trunk Ry Co. v Ives, 144 U. S., 408, 36 L. Ed., 485, 12 S. Ct., 679, at page 427 of the opinion:

"The underlying principle in all cases of this kind which requires a railroad company not only to comply with all statutory requirements in the matter of signals, flagmen and other warnings of danger at public crossings, but many times to do much more than is required by positive enactment, is, that neither the legislature nor railroad commissioners can arbitrarily determine in advance what shall constitute ordinary care or reasonable prudence in a railroad company, at a crossing, in every particular case which may afterwards arise."

In Erie Rd. Co. v Weinstein, 166 F., 271, 92 C.C.A., 189, 16 O.F.D., 365, the United States Circuit Court of Appeals of this circuit followed this case, and said, on page 274:

"The Ohio statute does not provide that compliance with these crossing signals shall excuse the railroad from taking other precautions, if the particular situation be such as that due care at the particuar place and time required other precautions. We think that compliance with such a statute will not exonerate a railway company from the charge of negligence, if the circumstances were such as that common prudence and proper regard for the safety of travelers at such crossing would require other precautions."

This and the Ives case, supra, were followed in Elukowich v New York, N. H. & H. R. Co., 291 F., 574. The Circuit Court of Appeals of the Fifth Circuit said, in Hines, Director General of Rds., v Hoover, 271 F., 645, on page 647:

"In addition to compliance with statutory requirements, it was the duty of defendant to perform any other acts required by the circumstances of the case and dictated by the rules of ordinary care and diligence."

The Circuit Court of this district predecessor to this court, dealt with this question in **Wheeling & Lake Erie Ry. Co. v Parker, Admr., 9 C.C. (N.S.), 28, 19 C.D., 1.** The opinion reads in part:

"I believe counsel argued orally that the company was held only to what the statute requires as to the giving of signals by bell and whistle. We think that the statutory rule may be not the only rule; that it does not destroy the general rule, that the company is held to the exercise of ordinary care."

The duty of exercising ordinary care, however, under the facts and circumstances disclosed by the evidence in the instant case, might have required the defendant to provide such a light; or, not having done so, to keep a better outlook for persons on the highway; and, further, to exercise a better control over the speed of its locomotive and by giving further warnings by either bell or whistle, or both, and perhaps otherwise, as the duty to exercise ordinary care might have required.

These are factors that claimed the attention of the trial court in determining the motion of the defendant for a directed verdict. They enter into the issues—both of defendant's negligence and the contributory negligence of plaintiff.

As was well said in New York Central & St. L. Rd. Co. v Van Dorp, supra: "One looking for the approach of a locomotive in the nighttime naturally expects to see a headlight, and, if he looks both ways, at a time when looking will be effective, and sees none, he may well infer that no train is approaching."

In view of this situation, we think the evidence presented jury issues both as to defendant's negligence and the contributory negligence on the part of the plaintiff, and no error was committed in submitting those issues to the jury.

It is urged that the recent decision of this court in **Toledo & Indiana Rd. Co. v Yhalkee, 51 Oh Ap, 378 (19 Abs 229), 1 NE (2d) 163,** rules this case. In that case the traction car was going forward and its headlight was lighted, according to the undisput-

ed evidence, which presents a situation very different from the one we now have here.

The plaintiff offered in evidence the hospital record card of his case, to show the nature of his treatment there and its cost, all of which appears on one side of the card. The defendant urges that the other side of the card bears upon it an admission very damaging to plaintiff's case. That side is devoted to general information about plaintiff, and under the heading of "Remarks" appears "Auto accident. Hit an Ann Arbor train." There is no evidence in the record as to who furnished the information on this side of the card, or who put it there. The evidence does show, however, that the plaintiff was unconscious following the collision, and that he was taken on an engine to the depot, where he regained partial consciousness, but soon relapsed into total unconsciousness and was taken to the hospital by the police ambulance squad, where he later regained consciousness. This statement may have come from the railroad men via the police, as easily as from the plaintiff. Either inference is purely speculation. We are not impressed with the probative value of this evidence.

Assignments of errors are made with reference to several items of evidence offered by plaintiff and admitted over the objection and exception of defendant. The plaintiff was permitted to describe at great length the objects that were to the north of Ketcham Avenue and west of the tracks of the Terminal Railroad, where a coal yard with its office and scale house, sheds, piles of coal and fences were located. None of these were even near the right of way of the defendant, and all were admittedly over 75 feet from the defendant's tracks. In view of the fact that plaintiff claims he looked as he passed this clear space of 75 feet between the railroads, and stopped within four feet of the crossing, the evidence about the coal yard and objects there was immaterial and should not have been admitted. If this were the only error in this record we would not think its effect sufficiently prejudicial to warrant a reversal of the judgment.

Defendant also complains because plaintiff was permitted to inquire of witnesses whether there were stationary lights or a watchman at the crossing, and complains because the fireman was cross-examined about the possibility of equipping the rear end of the locomotive with a headlight. Having in mind the duty of the defendant

to use ordinary care to protect the traveling public on that city street ▮▮ against a collision with its locomotive backing without a headlight on a very dark morning, and the authorities hereinbefore cited, we do not regard this evidence as improper.

The opening argument for the plaintiff contained some highly prejudicial statements. The first sentence was: "Ladies and gentlemen of the jury, when you get down there you will see these tracks in a gully."

The jury was not ordered to view the premises, and for them to have done so without the order of the court, and without proper supervision, would have been highly improper. This sentence, coming from counsel, was a suggestion or invitation to the jurors to go and look at the crossing, should there be an opportunity to do so during the further proceedings of the trial.

Shortly after this remark, referring to counsel for defendant, it was said: "He gets a chance to answer my evidence, if I don't, he is a Christian and he is a hot bird and every time he is hit he hollers."

To say the least, this was unbecoming language for one lawyer to use about another in the presence of the court and jury.

Later he said: "But you can arrive at the truth and the truth will put the liability upon these Receivers from Chicago, New York, or Franklin, Michigan, that is operating this engine."

. There was not a word of evidence about the receivers, not even that the railroad was being operated by receivers. This remark was off the record and was intended to influence the jury.

Another statement: "Oh, no, I have been in the railroad racket myself when it comes to make a report down there to the boss they had this fellow," referring to the fireman.

The counsel was testifying off the record a little bit about himself. This might not have been so serious but for his use of the term "racket" as applied to the railroad. In view of the odium that has attached to that word, its use in this connection might very well have had an unwarranted influence upon the jury.

Later in his argument, he said: "Now, if it isn't damnable evidence, if it isn't wanton negligence, heartless disregard of the persons and people on that highway to run that engine down in that condition, I will submit it to you, members of the jury, and that, is what we want **punitive damages** for."

The principal injury the plaintiff sustained was a fracture of the tibia, involving the joint surfaces. His left leg was in a cast in the hospital for six weeks, and at home five weeks, and he used crutches three months and suffered much pain, and still had pains at the time of the trial. Thirteen months after the accident he was steadily employed in the Chevrolet plant at Toledo, but he did not say at what wages nor in what capacity.

Before his injury he earned up to $30 per week as a salesman, hence his wage loss was about $1700. His medical and hospital bills were $400 and his automobile loss, $200, a total of about $2300, which left $7200 for pain and suffering. This amount prompts us to think the jury accepted the suggestion of ▮▮ counsel and did award "punitive damages" and was unduly influenced by the other improper comments mentioned.

Only as to the first and last remarks to the jury, above referred to, did counsel for defendant offer any objections, and when he did the court said nothing to the jury about them; but as to the last one, the most vicious one, the court said he did not hear it; nor did he seek to find out what it was, which he could have done from the court stenographer, as the arguments were reported in full. As to both of these comments by counsel, when objected to, their maker said he would withdraw them. This hardly repaired the damage done; at the least the court should have instructed the jury and admonished counsel concerning his improprieties in argument. The court's duty to confine argument within the bounds of propriety, and to the record, is not limited ▮▮ to occasions when objections are made by opposing counsel, but should be performed as a part of the court's duty to see that the trial is fairly and properly conducted.

As has been pointed out frequently, the counsel who must object to such misconduct of his opponent is at a disadvantage before the jury, and should not be compelled to risk prejudicing his cause in the minds of the jury to invoke the restraining aid of the court.

This court, with Judge Williams speaking for it, in vigorous terms expressed an opinion about such conduct of a lawyer in argument in Machaterre, a minor, v Dusha, 30 Oh Ap, 242, (6 Abs 621), 164 NE, 783. At page 248 he said:

"It is the imperative duty of a trial judge to promptly check argument of a prejudicial character which amounts to misconduct of counsel, and this duty may often

arise where there is no objection or exception by opposing counsel. It was especially the duty of the trial judge to interfere in the instant case, as the objectionable matter was excepted to by plaintiff's counsel. It may be that there were admonitions of the trial judge, previous to the calling in of the stenographer, which went unheeded. But, even if admonition failed, this county has the 'full complement of county buildings,' and it was the duty of the trial judge, as it is always his duty, to take the most drastic action, if necessary, to stop such improper practice."

In at least two other similar cases, this court has spoken on this subject. **Thatcher v Pennsylvania, Ohio & Detroit Rd. Co.,** 33 Oh Ap, 242, 246, 168 NE, 859; **Breymann v Penn., Ohio & Detroit Rd. Co.,** 43 Oh Ap, 473, 480 (12 Abs 665), 183 NE, 771, and **Souder v Hassenfeldt, Admrx.,** 48 Oh Ap, 377, 386 (16 Abs 563), 194 NE 47.

In the recent case of **Cleveland Ry. Co. v Crooks,** 130 Oh St, 255, 198 NE, 867, the Supreme Court discussed the relationship of improper argument upon an excessive verdict.

Complaint was also made about some of the closing argument made by counsel for plaintiff. By reading the argument of counsel for defendant, it appears that some of the remarks objected to were fairly responsive to comments by defense counsel. In fact, some of his statements relative to exhibit three, the hospital record, are not supported by the evidence, particularly the statement that the plaintiff gave the hospital that information. From all of this, if any prejudice resulted to the defendant, it was from the manner he handled it before the jury, of which he cannot now complain.

The court refused to give four instructions tendered in writing by the defendant before argument. This is assigned as error. In two of these the court was asked to say to the jury that the plaintiff's evidence "gives rise to a reasonable inference or presumption that the plaintiff's own negligence contributed proximately to the production of the injury here involved and that plaintiff, in order to recover, must as a part of his case in chief, produce evidence sufficient or equal to dispel that inference or presumption." The evidence did not warrant the court in saying as a matter of law that "such inference did arise. The court did give two instructions for the defendant wherein he told the jury, if they found that plaintiff's evidence did raise such inference, his evidence must equal or dispel that inference.

The other two instructions complained of were as follows:

"13. I instruct you that under the undisputed evidence in this case the engine which was involved in the accident was engaged in interstate commerce at the time of the accident, and that therefore it was subject only to the rules and regulations of the Interstate Commerce Commission with reference to lights.

"14. I instruct you that under the evidence in this case, the engine involved in this accident was not required, under the regulations and rules of the Interstate Commerce Commission, to have any lights upon its rear end."

In view of what has been said hereinbefore regarding the duty of the defendant to use ordinary care to protect the traveler on the highway, these instructions, standing alone, were incorrect, and might have been highly misleading to the jury when they say the lights on the locomotive were "subject only to the rules," etc.

Having regard for the lookout kept, the speed used, the warnings by bell or whistle given or not given, the absence of any warning signals at the crossing, the extreme darkness of the morning, ordinary care might very well have required more light, or stronger light on that tender than two small hand lanterns, assuming they were there as claimed by the trainmen. At least, this was an issue for the jury's determination.

We have considered and discussed all of the assignments of error presented in the brief of plaintiff in error. Our conclusion is that none of them is well taken except the one relating to the misconduct of counsel in argument, which we regard as prejudicial error, and the further one that the verdict is excessive and was given under the influence of passion and prejudice.

For these reasons the judgment is reversed and the cause remanded to the trial court for further proceedings.

Judgment reversed and cause remanded.

LLOYD and OVERMYER, JJ, concur.