ANNA SMITH, Administratrix of the Estate of J. D. SMITH, Deceased, v. GUY A. THOMPSON, Trustee of the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, and BERRYMAN HENWOOD, Trustee of the ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, a Corporation, Appellants.—161 S. W. (2d) 232.

Division Two, March 13, 1942.

Rehearing Denied, May 5, 1942.

*Thos. J. Cole* and *McReynolds & Flanigan* for appellant Guy A. Thompson.

398

*Robert W. McElhinney, Charles L. Henson* and *James E. Sater* for appellant Berryman Henwood.

*Edward V. Sweeney* and *Sizer & Myres* for respondent.

BOHLING, C.—Anna Smith, administratrix of the estate of J. D. Smith, deceased (hereinafter designated plaintiff), recovered

400

a judgment in the total sum of $20,000 against Guy A. Thompson, trustee of the Missouri Pacific Railroad Company, a corporation (hereinafter designated Missouri Pacific), and Berryman Henwood, trustee of the St. Louis, Southwestern Railway Company, a corporation (hereinafter designated Cotton Belt). The defendants appealed.

J. D. Smith, plaintiff's husband, was a swing brakeman for the Missouri Pacific and operated between Paragould, Arkansas (his home), and Malden, Missouri. On March 27, 1936, having completed his run to Malden, he was waiting to return to Paragould on the next Missouri Pacific freight train south when he was struck by a cut of cars of the Cotton Belt in the yards at Malden. He died the following day. Plaintiff's petition was in three counts. Counts one and two were under the Federal Employers' Liability Act (U. S. C. A., Tit. 45, Ch. 2) ; the first being for damages to plaintiff as the surviving widow and the second was for pain and suffering on the part of plaintiff's husband. The third count, in the alternative, was for damages under the Missouri death statute (Sec. 3652, R. S. 1939, Mo. Stat. Ann., p. 3353, sec. 3262). Plaintiff suffered an involuntary nonsuit with leave as to the third count. A nine juror verdict was returned for $15,000 on the first count and $5,000 on the second count.

I. Plaintiff seeks the dismissal of the appeal of the Cotton Belt because of alleged violations of our Rule 15.

Plaintiff complains of the fact that the Cotton Belt's brief states on page 13 instead of preliminary to the statement of the facts that we have jurisdiction because the judgment for plaintiff was in excess of $7,500. We think the objection hypercritical. The requirement was promulgated that counsel give thought to the question of appellate jurisdiction to avoid unnecessary delay resulting from cases submitted being transferred for want of appellate jurisdiction here. Hicks v. La Plant (Mo.), 145 S. W. (2d) 142[2]. If it be better form to make the jurisdictional statement prior to the "statement of the facts," its statement at the beginning of the "brief" proper is of insufficient moment to the dispatch of appellate work to call for the drastic action of dismissing the appeal.

The Cotton Belt's brief may not measure up to the formalities required by our Rule 15 with respect to the statement, in numerical order, of the points relied on, with citation of authority. As hereinafter explained, the Cotton Belt's liability on the record made is secondary and derivative, being statutory, and the Missouri Pacific's liability is primary. In fact, plaintiff argues she was entitled under the statutory provisions to a "peremptory instruction against this appellant" if the Missouri Pacific be liable and contends the Missouri Pacific was negligent in violating its Rule 17, quoted infra. The Cotton Belt assigned error in the ruling of its demurrer to the evidence, with subheads thereunder to the effect, among others, that plaintiff failed to make a submissible case against either defendant;

that plaintiff failed to make a submissible case against defendant Missouri Pacific, and that there was no causal connection between the negligence as submitted to the jury and the accident. These assignments are not supported by the citation of authority nor are they reiterated (and developed) as points, with the citation of authority. However, under the caption "Brief and Argument", points are developed, with citation of authority. Apparently plaintiff (as well as we) experienced no difficulty in understanding the complaints and has not been misled. In the circumstances, the motion to dismiss is overruled. Noell v. Missouri Pac. Rd. Co., 335 Mo. 687, 695, 74 S. W. (2d) 7, 10[2]; Farmers Elevator & Grain Co. v. Davis (Banc), 267 S. W. 393, 398[2]; Polk v. Missouri-K.-T. Rd. Co., 341 Mo. 1213, 1225[5], 111 S. W. (2d) 138, 144[10].

II. Plaintiff submitted her case and in her brief seeks to hold the judgment on one ground of negligence, viz., the Missouri Pacific's alleged violation of its Rule No. 17 (infra) to dim the headlight on its locomotive on the occasion in question. It is contended that actionable negligence may not be so predicated because: (1st) the rules of the Cotton Belt governed the movement and (2d) that Sec. 5274, R. S. 1939 (infra), required the operation of the Missouri Pacific train in the nighttime with "an electric headlight of fifteen hundred candle power brilliancy;" that there was no proof that any negligence of the Missouri Pacific was the proximate cause of Smith's injury, and that Smith assumed the risk and recovery may not be had. Defendants stood on their demurrers to plaintiff's evidence. A more or less detailed statement of facts is necessary.

The railroad tracks and yards at Malden are the property of the Cotton Belt. The Missouri Pacific operated trains thereover under a lease agreement. Plaintiff proceeded on the theory the Missouri Pacific was primarily liable and the Cotton Belt's liability was derivative or secondary, being founded in statutory provisions imposing liability on a lessor railroad for the delict of its lessee railroad. [Plaintiff cites Secs. 5162, 5163, R. S. 1939, Mo. Stat. Ann., pp. 2095, 2098, secs. 4689, 4690.]

At the beginning of the trial, plaintiff offered in evidence documents consisting of the agreement and lease between the Cotton Belt and the Missouri Pacific. In lieu of abstracting the whole thereof the parties stipulated that said exhibits contained the following:

"Control of Trains, etc., on Joint Track. Section 13. The Southwestern Company shall control the admission and exit of trains, engines and cars on said joint track, and shall control the movement of the same thereon and the Mountain Company's trains, engines, cars and employes, while thereon, be subject to the rules, regulations and discipline of said Southwestern Company."

The Missouri Pacific succeeded to the rights of the "Mountain Company."

Said Missouri Pacific Rule No. 17, put in evidence over objections and exceptions, reads as follows:

"The headlight will be displayed to the front of each train by night. It must be concealed or extinguished when a train turns out to meet another and has stopped clear of the main track or is standing to meet a train at end of two or more tracks or junction.

"It must be dimmed while passing through the yards where yard engines are employed; approaching stations at which stops are to be made or where trains are receiving or discharging passengers; approaching train order signals, junctions, terminals, or meeting points, or while standing on main track at meeting points and on two or more tracks when approaching trains in the opposite direction."

The railroad tracks extend in a generally north and south direction but, entering Malden from the north near the east corporate boundary, curve and run practically east and west through Malden and near the west corporate boundary curve and proceed south. The station is immediately north of the main line track and south of the main line track are six switch tracks, the first being the passing track, also known as track No. 1, with tracks Nos. 2, 3, etc. in sequence south of and paralleling the main line and passing tracks. State Highway No. 25 crosses these tracks and is the first street east of the station. A short distance east of said highway and on the main line track is a crossover switch to the passing track, farther east another, and east of the easternmost of said switches is U. S. Highway No. 62, which crosses the main line, the passing and track No. 2.

A north bound Cotton Belt freight train arrived at Malden about eleven o'clock on the night of March 27, 1936. Stopping in front of the station, it received orders to pick up four cars, west of the station, on track No. 2. This required the changing of four switches. The Cotton Belt train was cut four cars back of the locomotive. The exact movements of the Cotton Belt are a bit obscure, but it proceeded east along the main line and then, via the crossover switches to the passing track and to track No. 2, a part of the movement being a back-up movement. The locomotive was about opposite the station when the coupling was made. About this time, Cotton Belt brakeman Mc-Haney (the only witness testifying to Smith's actions) observed a long Missouri Pacific freight train approaching from the north around the curve on the passing track. He went forward and stopped the Missouri Pacific on the passing track, about opposite the easternmost crossover main line switch, to prevent the blocking of the Cotton Belt in on the track No. 2. The Cotton Belt, with the eight cars, proceeded over track No. 2, the passing track, and crossover switches onto the main line. The main line curved to the north at this point and McHaney, after lining the "main line switch to headout," mounted the west car of the Cotton Belt on the north or fireman's side that signals might be given the fireman and relayed to the engineer. The

east and west distances involved are not fully developed. The Cotton Belt on the main track, moving six to seven miles an hour, and the Missouri Pacific on the passing track, with steam working, bell ringing and whistle sounding, moving at about four miles an hour, proceeded westwardly toward the station, the Missouri Pacific starting in the lead of the Cotton Belt. There was testimony to the effect that one looking at a locomotive electric headlight when on bright would be blinded for a short time.

McHaney testified that, as he looked toward the station, he saw Smith approaching; that Smith reached the main line crossover switch a short distance east of State Highway No. 25, and lined the switch over, the target changing from red to green. The distance between the main line track and the passing track is twelve feet and the switchstand is approximately four- and one-half feet south of the main line track. Witness testified that Smith was moving around the switchstand between the main line and passing tracks and was never between the rails of the main line track; sometimes he would be south of the stand and at other times between the stand and the south rail of the main line track; that Smith was in a stooped position, "acting like he dropped something on the ground, looking around on the ground like he was looking for an object or something he had dropped;" "like he couldn't see very well down there or something." When witness was about one-and-a-half car lengths away (67½ feet) he hollered at Smith and commenced to give a stop signal when about ten feet nearer. Being on the north side of the Cotton Belt's lead car, McHaney's view of Smith became obstructed as the Cotton Belt neared Smith. The Cotton Belt had secured a lead of about one-half car length over the Missouri Pacific as they neared this crossover switch, and Smith received fatal injuries when struck by (inferentially, the overhang of) the Cotton Belt's lead car.

▮ (a) Plaintiff throughout has predicated her right to a recovery on a finding that the Missouri Pacific headlight was negligently permitted to give forth a blinding light in violation of Missouri Pacific Rule No. 17, but has not specifically answered the contentions that the rules of the Cotton Belt, instead of the rules of the Missouri Pacific, governed the movement, and that Missouri Pacific Rule No. 17 was immaterial and, in so far as it conflicted with Sec. 5274, infra, was of no force and effect; grounds advanced in opposition to its introduction in evidence. With plaintiff's evidence establishing the applicability of the Cotton Belt rules, we think plaintiff, in the circumstances of record, may not maintain a judgment predicated on a violation of Rule No. 17 of the Missouri Pacific; and, for this reason, the judgment is to be reversed. Broad assertions of plaintiff's expert witnesses that the rules of all railroads were the same does not aid plaintiff. Upon cross-examination, they disclosed a lack of testimonial familiarity with the Cotton Belt's rules, which would have been the

404

best evidence. Plaintiff's petition pleaded negligence in the violation of the Missouri Pacific's (not the Cotton Belt's) rules. However, plaintiff received the verdict of the jury and may be able to recover under the applicable rules of the Cotton Belt or, possibly, of the Interstate Commerce Commission. In the interest of evenhanded justice let the cause be remanded as to both defendants.

(b) Section 5274, R. S. 1939, Mo. Stat. Ann., p. 2205, sec. 4845, requires railroads "to equip, maintain and use upon every locomotive being operated in road service in this state in the nighttime an electric headlight of fifteen hundred candle power brilliancy, measured with the aid of a reflector . . . " Cases state a failure to observe this statutory requirement constitutes negligence per se (Savage v. Chicago, R. I. & P. Ry. Co., 328 Mo. 44, 55, 40 S. W. (2d) 628, 629, 633[9]; Berry v. Kansas City Pub. Serv. Co., 341 Mo. 658, 672, 108 S. W. (2d) 98, 104[9]). It is contended that where a conflict exists between a rule adopted by a railroad company and a statute of the State, the statute takes precedence and actionable negligence may not be predicated on the nonobservance of that portion of the rule conflicting with the statutes; citing Katzenberger v. Lawo, 90 Tenn. 235, 16 S. W. 611, ▮ 25 Am. St. Rep. 681, 13 L. R. A. 185, 186; 51 C. J., p. 1049, Sec. 1028, p. 1061, Sec. 1065, to the proposition that municipal ordinance provisions contravening in final analyses state law are ineffective. What an applicable rule of a railroad requires may be evidence in the nature of an admission of what should be done, but what should be done is measured by what the standard of due prudence requires to be done or by what applicable authoritative enactments, legislative or other, require to be done, rule or no rule. This, however, is an action under the Federal Employers' Liability Act and no issue is made with respect to Smith being engaged in interstate commerce. Section 5274, supra, a State statute, is not necessarily controlling. Napier v. Atlantic Coast Line Rd. Co., 272 U. S. 605, 612, 71 L. Ed. 432, 47 Sup. Ct. 207; Louisville & N. Rd. Co. v. Alabama, 16 Ala. App. 199, 208[4], 76 So. 505, 514[4], response of Supreme Court to certified question; Franklin v. Nowak 53 Ohio App. 44, 4 N. E. (2d) 232, 235[1]. Consult Atlantic Coast Line Rd. Co. v. Georgia, 234 U. S. 280, 290, 58 L. Ed. 1312, 34 Sup. Ct. 829; Vandalia Rd. Co. v. Public Service Comm of Ind., 242 U. S. 255, 259, 61 L. Ed. 276, 37 Sup. Ct. 93. The point is ruled against defendants.

(c) Defendants' contentions that there was no testimony of probative value that the headlight of the Missouri Pacific was on bright, or that Smith was blinded by said headlight, or that his being blinded was the proximate cause of his injuries calls for additional facts, the substance of which follows.

McHaney would not testify that the Missouri Pacific headlight was on bright but did testify he could see "half a mile anyway" down

the track by reason of the Missouri Pacific headlight. Plaintiff's expert witnesses testified that the headlight of a locomotive when on bright would show down the track for half a mile, and with the light turned on dim, for two to three hundred feet. This was sufficient to sustain a finding that the Missouri Pacific's headlight was on bright.

Plaintiff's expert witnesses also testified that if one in the position of Smith should look at the headlight of the Missouri Pacific when on dim he could see but if on bright he would be blinded for a short time. We here recall McHaney's testimony that he observed the actions of Smith; that as the Cotton Belt cars approached the switch, Smith was in a partly stooped position, moving around between the main line and passing tracks, part of the time with his back to witness and part of the time facing him, "acting like he dropped something on the ground, looking around on the ground like he was looking for an object or something he dropped;" "like he couldn't see very well down there or something. I think he lost his pencil or something. I don't know what he did lose;" that witness could not tell whether Smith was going to clear the Cotton Belt lead car and hol- lered at Smith; that witness' position prevented him seeing Smith when struck; and that "from the time I hollered at him [one-and-a-half car length—67½ feet—away] he never did look up." While Smith may not have looked up in the interval after McHaney "hol- lered" and the time the lead car obstructed McHaney's view of Smith, the jury was privileged to find from a consideration of Mc- Haney's testimony covering Smith's actions and favorable to plain- tiff that Smith had at sometime while the trains were approaching faced the Missouri Pacific headlight; and from the testimony of plain- tiff's expert witnesses that Smith's failure to duly observe the ap- proach of the Cotton Belt cars was occasioned by his being blinded by the bright headlight of the Missouri Pacific.

We think this conclusion consistent with the established facts. Mc- Haney, unaffected by the Missouri Pacific headlight, could see. Smith, unless his sight was affected, should have observed the approach of the Cotton Belt cars. His left leg, between the ankle and knee, and his right hand were run over. It is not to be presumed he intended committing suicide. This court has had occasion to consider the blinding effect of bright lights on a locomotive headlight; see Martin v. Wabash Ry. Co., 325 Mo. 1107, 1121, 30 S. W. (2d) 735, 741.

 (d) With the Missouri Pacific starting in the lead of the Cotton Belt and the jury privileged to find Smith oblivious of and not observing or being unable to observe the faster approach of the Cotton Belt by reason of being blinded by the bright headlight of the Missouri Pacific, we may not say as a matter of law that he assumed an ordinary risk of his employment or an obvious or fully known and appreciated extraordinary risk arising from the greater speed

of the Cotton Belt in conjunction with the bright headlight of the Missouri Pacific. Johnson v. Chicago & E. I. Ry. Co., 334 Mo. 22, 32[6], 64 S. W. (2d) 674, 678[9-11]; Gately v. St. Louis-S. F. Ry. Co., 332 Mo. 1, 9[1, 2], 56 S. W. (2d) 54, 57[1-3]; Owen v. Kurn, 347 Mo. 516, 521[2-4], 148 S. W. (2d) 519, 522[2-6]; Grosvener v. New York Cent. Rd. Co., 343 Mo. 611, 619(I), 123 S. W. (2d) 173, 176[1]; Lehigh Valley Rd. Co. v. Mangan, 278 Fed. 85, 91[5, 6]. Consult Preston v. Union Pac. Rd. Co., 292 Mo. 442, 454[4], 239 S. W. 1080, 1082[4], certiorari denied, 260 U. S. 753, 67 L. Ed. 496, 43 Sup. Ct. 14.

J. E. Nichols, the admissibility of whose deposition is ruled infra, was the engineer in charge of the Cotton Belt cars. He testified that as he passed the Missouri Pacific on the Cotton Belt's movement from track No. 2 to the main line the Missouri Pacific headlight was on dim. From this, the Missouri Pacific headlight was thereafter switched to the bright light. Defendants argue that Smith was an experienced brakeman and after he threw the switch he had ample time to step to a place of safety to the north of the main line or to the south of the passing track. Smith was not at the switch for his own convenience but to facilitate the operation of the trains and he had the train orders for the Missouri Pacific. Defendants' argument goes to the conduct of Smith and what he should have done but failed to do, for his own safety. It appears to be more properly applicable to the defense of contributory negligence under the record made. Erie Rd. Co. v. Purucker, 244 U. S. 320, 325, 61 L. Ed. 1166, 37 Sup. Ct. 629; Owen v. Kurn, 347 Mo. 516, 523[5], 148 S. W. (2d) 519, 523[7]; 2 Roberts Federal Liabilities of Carriers, sec. 836.

III. Error is asserted in the admission of the unsigned deposition of said J. E. Nichols over timely objection, his signature not having been waived. Powell v. Hunter, 257 Mo. 440, 445, 165 S. W. 1009, 1010[1]; Brown v. Lafayette L. & F. Co. (Mo. App.), 229 S. W. 242, 245[6]. The record discloses that Mr. Nichols died before the trial and without having signed the deposition. In St. Charles Sav. Bk. v. Denker, 275 Mo. 607, 616(II), 205 S. W. 208, 210[3-5], the admissibility of the unsigned deposition of a witness whose untimely sickness and following death had prevented his cross-examination and completion of the deposition was before the court. Although the deposition was held inadmissible for other reasons, we considered, after discussion, the fact that death prevented the cross-examination of the witness was insufficient of itself to exclude the deposition. A fortiori, a deposition complete as to cross-examination, as well as examination in chief, should not be excluded solely because an act of God intervenes before the deposition is signed by the deponent. [See Broome County Farmers' Fire Relief Assn. v.

New York State El. & G. Corp., 264 N. Y. 614, 191 N. E. 591. Consult Mobley v. Hamit, 1 Marshall, *590, 8 Ky. 439.]

For the error in predicating recovery on Missouri Pacific Rule No. 17, the judgment is reversed and the cause remanded. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.