BROWN v. CHICAGO, R. I. & P. R. CO.

Civ. No. 699.

United States District Court
N. D. Iowa, W. D.
Oct. 29, 1952.

Floyd E. Page, Denison, Iowa, for plaintiff.

Alden B. Howland, Des Moines, Iowa, for defendant.

GRAVEN, District Judge.

Shortly after midnight on September 16, 1950, near the Town of Ocheyedan, Osceola County, Iowa, a collision occurred between one of the defendant's trains and an automobile in which the plaintiff's intestate, William E. Brown, was riding as a passenger. William E. Brown died as the result of injuries received in the collision. The plaintiff seeks in this case to recover damages for the death of William E. Brown. The plaintiff in her complaint charged the defendant with several acts of negligence. One of such charges related to the insufficiency of the locomotive headlight illumination. The plaintiff in her complaint claimed that under the circumstances existing at or near the time of the collision the claimed insufficiency of the headlight illumination was a proximate cause of the collision and the resulting death of William E. Brown. The plaintiff charged that the headlight did not comply with the power and brilliancy requirements as set forth in Section 477.22, Code of Iowa 1950, I.C.A. The material portion of that Section provides as follows:

"It shall be the duty of every person, firm, or corporation owning or operating any line of railway within the state, except lines under twenty miles in length operated wholly within this state, to equip all locomotives, power vehicles, power cars, or other equipment used as the equivalent of or in place of a locomotive, when used in the transportation of passengers or freight, with a headlight of sufficient candle power, measured with a reflector, to throw a light in clear weather that will enable the operator of same to plainly discern an object the size of a man lying prone on the track at a distance of eleven hundred feet from the headlight, and thereafter to maintain and use such headlights upon every such locomotive, vehicle, car, or other equipment."

The defendant in its answer alleged that the provisions of this Iowa statute were not applicable. It further alleged that the applicable provisions as to power and brilliancy of the headlight were contained in a regulation of the Interstate Commerce Commission promulgated under the authority given to it by the Boiler Inspection Act and the amendments thereto, 45 U.S.C.A. § 22 et seq. That regulation provides as follows:

"Each locomotive used in road service between sunset and sunrise shall have a headlight which shall afford sufficient illumination to enable a person in the cab of such locomotive who possesses the usual visual capacity required of locomotive enginemen, to see in a clear atmosphere, a dark object as large as a man of average size standing erect at a distance of at least 800 feet ahead and in front of such headlight; and such headlight must be maintained in good condition." United States Regulations for Steam and Other Than Steam Locomotives § 231 (a) (1950).

It is apparent that under the Iowa statute headlight illumination of greater power and brilliancy is required than under the Interstate Commerce Commission regulation, and it is the claim of the plaintiff that it was the duty of the defendant to observe that higher standard. It is the contention of the defendant that its headlight did comply with the Interstate Commerce Commission regulation and that negligence on its part cannot be based upon noncompliance with the State statute. The plaintiff and the defendant by proper procedure have raised the question as to whether the Iowa statute or the Interstate Commerce Commission regulation is controlling as to the matter of the power and brilliancy of the headlight. It is conceded that the locomotive, at and preceding the collision, was moving goods in interstate commerce.

The question requires a consideration of federal legislation relating to railroad equipment and of decisions thereunder.

Congress first legislated in the matter of the safety of railroad equipment by the

enactment of the Safety Appliance Act, c. 196, 27 Stat. 531, on March 2, 1893, 45 U.S.C.A. § 1 et seq. On February 17, 1911, Congress enacted the Boiler Inspection Act, c. 103, 36 Stat. 913. That Act as originally enacted granted the Interstate Commerce Commission "rule making" and "inspection" powers. However, such powers were limited to the boilers of locomotives. On March 4, 1915, Congress enacted an amendment to the Boiler Inspection Act, c. 169, 38 Stat. 1192, in which such powers were extended to include the entire locomotive and tender. That amendment will be hereafter referred to as the 1915 amendment.

Prior to the enactment of the original Boiler Inspection Act, a state statute prescribing standards for locomotive headlights was upheld. Atlantic Coast Line R. Co. v. State, 1910, 135 Ga. 545, 69 S.E. 725, 32 L.R.A.,N.S., 20, affirmed sub nom after passage of the Boiler Inspection Act, Atlantic Coast Line v. Georgia, 1913, 234 U.S. 280, 34 S.Ct. 829, 58 L.Ed. 1312. The holding was to the effect that Congress had not, by the enactment of the Safety Appliance Act, occupied that particular field.

The United States Supreme Court soon after passage of the Boiler Inspection Act had before it a case involving the status of an Indiana statute relating to "grabirons" on railway cars. The Indiana Supreme Court had upheld the statute. Southern Ry. Co. v. Railroad Comm. of Ind., 1913, 179 Ind. 23, 100 N.E. 337. On appeal to the United States Supreme Court that decision was reversed. 1915, 236 U.S. 439, 35 S.Ct. 304, 59 L.Ed. 661. That Court held that Congress, by the enactment of the Safety Appliance Act, had so far occupied the field relating to the equipment of railway cars with safety appliances as to supersede existing state legislation covering the same matter. The Court in that connection stated, 236 U.S. at page 446, 35 S.Ct. at page 305:

"* * * Until Congress entered that field the States could legislate as to equipment in such manner as to incidentally affect without burdening interstate commerce. But Congress could pass the Safety Appliance Act only because of the fact that the equipment of cars moving on interstate roads was a regulation of interstate commerce. Under the Constitution the nature of that power is such that when exercised it is exclusive, and ipso facto supersedes existing state legislation on the same subject. * * *"

The Court further stated, 236 U.S. at page 448, 35 S.Ct. at page 306:

"The test, however, is not whether the state legislation is in conflict with the details of the Federal law or supplements it, but whether the State had any jurisdiction of a subject over which Congress had exerted its exclusive control. The Safety Appliance Act having superseded the Indiana statute the judgment imposing the penalty must be reversed * * *."

State legislation prescribing standards for locomotive headlights was regarded as being applicable in two cases which arose between the time of the enactment of the original Boiler Inspection Act and the time it was amended in 1915 although decided after the 1915 amendment. Randall v. Minn. St. P. & S. S. Ry. Co., 1916, 162 Wis. 507, 156 N.W. 629; Vandalia R. R. Co. v. Public Service Comm., 1916, 242 U.S. 255, 37 S.Ct. 93, 61 L.Ed. 276.

In 1926 the United States Supreme Court considered the effect of the 1915 amendment upon state legislation relating to locomotives. Three appeals relating to that matter were combined for hearing in the case of Napier v. Atlantic Coast Line, 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432. Two of the appeals had to do with a Wisconsin statute and order of the State Railroad Commission relating to cab curtains for locomotives and the other appeal had to do with a Georgia statute relating to automatic doors for locomotive fireboxes. The principal issue in those cases was stated by the Court, 272 U.S. at page 607, 47 S.Ct. at page 207, as follows:

"The main question, which is the same in the three cases, is one of statutory construction. It is whether the Boiler Inspection Act has occupied the field of regulating locomotive equipment used on a highway of interstate commerce, so as to preclude state leg-

islation. Congress obviously has power to do so. * * *"

The Court stated its holding, 272 U.S. at page 613, 47 S.Ct. at page 210 as follows:

"We hold that state legislation is precluded, because the Boiler Inspection Act, as we construe it, was intended to occupy the field. The broad scope of the authority conferred upon the Commission leads to that conclusion. Because the standard set by the Commission must prevail, requirements by the States are precluded, however commendable or however different their purpose. * * *"

The courts which have passed upon the question of standards for locomotive headlights since the 1915 amendment have, in the greater number of cases, held that the regulations of the Interstate Commerce Commission, issued under the authority granted it relating to locomotive headlights, have superseded state statutes covering that subject matter. The case of Louisville & N. R. Co. v. State, 1917, 16 Ala.App. 199, 76 So. 505, decided after the 1915 amendment but prior to the Napier case, struck down an Alabama locomotive headlight statute. At page 514 of 76 So., the court stated:

"When the amendatory act of Congress approved March 4, 1915, is read in connection with the Safe Locomotive Boilers Act of February 17, 1911, we cannot escape the conclusion that the intention of Congress is plain that the states must be excluded from the right to legislate within the field to which the several original acts, and the amendatory act extended the federal authority. It is immaterial that the final rules on the subject of headlights to be used on such locomotives were not promulgated by the Interstate Commerce Commission until, respectively, June 6, and December 26, 1916, after the commission of the alleged offense for which the prosecution was had.

"We are of the opinion that the act of the Alabama Legislature of July 17, 1915, is contrary to the express purpose and scope of the amendatory act of Congress of March 4, 1915, and that as to engines engaged in interstate commerce it has no application. * * *"

Most of the cases decided after the Napier decision reached the same result. Waller v. So. Pac. Co., D.C.N.D.Calif.1941, 37 F. Supp. 475 (Nevada statute); Northern Pac. Ry. Co. v. Cooney, D.C.Montana 1935, 12 F.Supp. 73 (Montana statute); Penn. Ry. Co. v. Pelsor, 1929, 90 Ind.App. 111, 168 N.E. 249 (Indiana statute); Smith v. Thompson, Mo.Sup., 1944, 182 S.W.2d 63 (Missouri statute); Smith v. Henwood, 1942, 349 Mo. 396, 161 S.W.2d 232 (Missouri statute); Franklin v. Nowak, 1935, 53 Ohio App. 44, 4 N.E.2d 232 (Ohio statute); N. Y. Central & St. L. R. Co. v. Van Dorp, 1930, 36 Ohio App. 530, 173 N.E. 445 (Ohio statute).

State locomotive headlight statutes have been upheld after the 1915 amendment went into effect, however. A Mississippi statute was upheld in Ill. Central Ry. v. Reed, 1917, 113 Miss. 545, 74 So. 423, by relying on the case of Atlantic Coast Line v. Georgia, supra, which was no longer controlling in light of the 1915 amendment. The Arkansas Supreme Court assumed that an Arkansas statute relating to locomotive headlights was controlling in St. Louis San Francisco Ry. Co. v. Stewart, 1918, 137 Ark. 6, 207 S.W. 440. In a case decided subsequently to the Napier case the Arkansas Court again treated that statute as controlling. Mo. Pac. Ry. Co. v. Merrell, 1940, 200 Ark. 1061, 143 S.W.2d 51. In neither of the Arkansas cases was any issue made of the possible conflict between State and Federal law on this point.

 In the present case both parties in their arguments cited and discussed the Iowa case of Fleming v. Richardson, 1946, 237 Iowa 808, 24 N.W.2d 280. In that case there was presented for determination the question of the validity of a portion of an Iowa statute, now Section 477.27, Code of Iowa 1950, I.C.A., which required a platform at each end of a caboose. It was held by a divided court that the portion of the statute involved had not been superseded by the Federal Safety Appliance Act or the regulations issued thereunder by the Interstate Commerce Commission. The Court stated that the applicable test to be applied

in cases where it was claimed that state regulations had been superseded by federal action was as follows, 24 N.W.2d at page 291:

"Such state regulations remain in force until superseded by Congressional action in the particular subject matter, and the supersedence must be by specific provisions. * * *"

The Court then found that specific federal provision relating to caboose platforms was lacking and that, therefore, the portion of the Iowa statute involved had not been superseded. The converse of the rule stated by the Iowa Court would be that, if there was a specific federal provision, such provision would supersede a state statute covering the same subject matter. In the instant case there is a regulation of the Interstate Commerce Commission specifying in detail as to power and brilliancy of the headlights on locomotives. Therefore, under the rule stated by the Iowa Court, the Iowa statute in question which specifies as to the same matters would be ineffective. Whatever may be the status as to state legislation relating to cabooses, see also Terminal R. R. Ass'n v. Brotherhood of Railroad Trainmen, 1942, 318 U.S. 1, 63 S. Ct. 420, 87 L.Ed. 571, the United States Supreme Court has made it clear that the federal government by the Boiler Inspection Act and the regulations issued by the Interstate Commerce Commission has occupied the field in the matter of locomotive equipment; and that such field is closed to State action.

It has been suggested that the provisions contained in the Boiler Inspection Act and the regulations issued thereunder by the Interstate Commerce Commission should be regarded as the minimal requirements and that it would be permissible for a state to prescribe higher requirements. In the case of Pennsylvania R. Co. v. Pub. Serv. Comm., 1919, 250 U.S. 566, 40 S.Ct. 36, 63 L.Ed. 1142, in which the United States Supreme Court held inapplicable a Pennsylvania statute relating to mail cars, the Court stated, 250 U.S. at page 569, 40 S.Ct. at page 37:

"* * * But when the United States has exercised its exclusive powers over interstate commerce so far as to take possession of the field, the States no more can supplement its requirements than they can annul them. * * *"

In the present case the plaintiff's intestate was neither a passenger on one of the defendant's trains nor an employee of the defendant but a member of the general public. It is suggested that such being the case the duty owed to him by the defendant in the matter of headlight illumination is not necessarily that prescribed in the regulation of the Interstate Commerce Commission. In the recent case of Scott v. Chicago, Rock Island & Pacific Railway Company, 8 Cir., 1952, 197 F.2d 259, in which recovery was sought for the death of an automobile passenger which occurred as the result of a railroad crossing collision in Iowa, the Court of Appeals for the Eighth Circuit held that a violation of the Boiler Inspection Act had been shown in regard to the condition of the bell on the locomotive. The Court stated, 197 F.2d at page 261:

"* * * This Act has been held not merely for the protection of railroad employees but also to promote the safety of passengers and the public generally. * * *"

See, also, in this connection Northern Pacific Ry. Co. v. Cooney, D.C.Montana 1935, 12 F.Supp. 73. It is the view of this Court that the regulation of the Interstate Commerce Commission in question prescribes the duty owed to members of the public by a railroad in the matter of headlight illumination and that in its instructions to the jury this Court should set forth that regulation and instruct the jury that such regulation prescribed the duty owed by the defendant to plaintiff's intestate.

It is the holding of the Court that the duty owed by the defendant to the plaintiff's intestate in this case, in the matter of locomotive headlight illumination, is that fixed by the regulation of the Interstate Commerce Commission and not that fixed by Section 477.22, Code of Iowa 1950, I.C.A.