Helen ROTH, Administrator
of the Estate of Arnold
Roth, Plaintiff,

v.

I & M RAIL LINK, L.L.C.; Union Pacific Railroad Co.; Burlington Northern Santa Fe Rail Way Co.; General Electric Company; and General Electric Transportation Systems Company, Defendants.

No. 3–00–CV–10053.

United States District Court,
S.D. Iowa,
Davenport Division.

Oct. 12, 2001.

George T. Brugess, Daniel J. Downes, J. Dillon Hoey, James Louis Farina, Richard A. Haydu, Robert J. Drummond, James T. Foley, John M. Dugan, Hoey Farina & Downes, Chicago, IL, for Helen Roth.

David B. Potter, Jennifer K. Eggers, Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, Bruce E. Johnson, Lewis Webster Johnson Van Winkle & Devolder, Des Moines, IA, for I & M Rail Link LLC.

Bruce E. Johnson, Lewis Webster Johnson Van Winkle & Devolder, Des Moines, IA, for Union Pacific Railroad, Burlington Northern Railroad Co.

David B. Potter, Jennifer K. Eggers, Bliss A. Baldwin, Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, Daniel P. Kitchen, Tindal & Kitchen, Washington, IA, for General Electric, General Electric Transportation Systems Co.

## ORDER

LONGSTAFF, Chief Judge.

Before the Court now is defendants' motion for summary judgment, (Clerk's No. 43), filed on July 1, 2001, by General Electric Company and General Electric Transportation System (collectively, G.E.). Plaintiff, Helen Roth (Roth), filed her response on August 31, 2001. G.E., construing an argument in Roth's response as a discovery motion, filed a resistance to the discovery motion on September 14, 2001, and filed a reply brief concerning the motion for summary judgment on September 17, 2001. Oral argument has been requested, but found unnecessary. The motion is fully submitted.

## I. BACKGROUND

Unless otherwise indicated, the following facts are either undisputed or viewed in the light most favorable to the non-moving party.

On August 11, 1999, Arnold Roth was working for Defendant I & M Rail Link (I & M) as a conductor in Clinton, Iowa. A train owned by Defendant Union Pacific Railroad (UP) approached Clinton, traveling west. Under a detour agreement between UP and I & M, the train was to pass through I & M's Clinton railroad yard.

At approximately 4 p.m., Arnold Roth and Carl Finzel, an I & M locomotive engineer, met the UP crew at the junction of the I & M and UP tracks, boarded the lead locomotive of the UP train, and proceeded toward the Clinton railroad yard. G.E. manufactured the lead locomotive, UP 9777, in 1994.

At approximately 4:10 p.m., the UP train, while traveling approximately 16.5 miles per hour, collided with an empty

tank car at the rear of a stopped freight train. (Pl.'s Ex. 3 at 27.) The empty tank weighed approximately 55,000 to 65,000 pounds. (Pl.'s Ex. 3 at 28.)

Federal regulations promulgated under the Locomotive Inspection Act (LIA), 49 U.S.C. §§ 20701–20903 (1997), require crashworthy features in certain locomotives to prevent the cab from collapsing in a collision. *See* 49 C.F.R. § 229.141. Roth contends that G.E.'s strategy of compliance with section 229.141 included collision posts that could withstand an override by another locomotive engine weighing 350,-000 pounds at a moderate speed. (Pl.'s Ex. 3 at 75.) Regulations define collision posts as, "structural members of the end structures of a vehicle that extend vertically from the underframe to which they are securely attached and that provide protection to occupied compartments from an object penetrating the vehicle during a collision." 49 C.F.R. § 235.5.

Roth's expert, William Bogett, testified that at impact the tank hit the collision post on the engineer side of the locomotive's cab, the collision post weld failed at the deck, and the tank car crushed the cab, killing both Arnold Roth and Finzel. (Pl.'s Ex. 3 at 48.)

Arnold Roth's widow, Plaintiff Helen Roth, filed her complaint in this Court on April 20, 2000. In Counts VI through IX of her complaint, Roth asserts state-law negligence claims. Specifically, she claims that G.E. negligently designed and manufactured the locomotive at issue, failed to provide adequate warnings and instructions with the locomotive, failed to design and manufacture its locomotive to withstand reasonably foreseeable collisions, failed to investigate and test its locomotive for crashworthiness, permitted a defective locomotive into the stream of commerce, failed to design and manufacture its locomotive to comply with applicable federal regulations, and was otherwise careless and negligent.

In its motion for summary judgment, G.E. contends the LIA preempts all plaintiff's state-law claims. G.E. also argues that section 229.141 does not apply to the locomotive at issue, because the UP 9777 locomotive is not an MU locomotive as defined under applicable regulations.[1] G.E. further argues that section 229.141 does not regulate welds.

In response, Roth asserts the LIA does not preempt her claims, because she does not seek to regulate locomotives by imposing additional requirements beyond those imposed under the LIA, but rather merely seeks compensation under state tort laws for G.E.'s violation of existing regulations under the LIA. Roth maintains the slow speed of the locomotive before impact, and the relative light weight of the tank car, provide evidence of non-compliance with section 229.141. Roth further argues that the LIA does not apply to state tort claims against manufacturers, because the Secretary of Transportation has not prescribed a regulation concerning the tort liability of manufacturers of locomotive parts or appurtenances. Finally, Roth asks this Court to overlook any shortcomings in Bogett's testimony, on the basis that G.E. did not adequately respond to discovery requests.

In its reply, G.E. contends that even if Roth's claims are not preempted, Roth has not offered any admissible evidence to support her allegation that any of the locomotive's welds were defective. Specifically, G.E. contends the only evidence Roth has

---

1. "MU locomotive" means "a multiple operated electric locomotive … [w]ith one or more propelling motors designed to carry freight or passenger traffic or both; or [w]ithout propelling motors but with one or more control stands." 49 C.F.R. § 229.5.

to support the claim that G.E. failed to comply with section 229.141 is Bogett's testimony, and Bogett's testimony is inadmissible because it fails to meet the standards for the admission of expert testimony under Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Therefore, G.E. argues, Roth has offered no admissible evidence to oppose G.E.'s summary judgment motion.

## II. APPLICABLE LAW AND DISCUSSION

### A. Summary Judgment Standard

A court shall grant a motion for summary judgment only if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court must consider the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Carey v. Shiley, Inc.*, 32 F.Supp.2d 1093, 1096 (S.D.Iowa 1998).

To preclude the entry of summary judgment, the nonmoving party must make a showing sufficient to establish the existence of every element essential to his case, and on which he has the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Reed v. ULS Corp.*, 178 F.3d 988, 989 (8th Cir.1999). When a motion is made and supported as required in Federal Rule of Civil Procedure 56(a), the adverse party may not rest upon the mere allegations or denials in his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. At the summary judgment stage, the court may not make determinations about the credibility of witnesses or the weight of the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Failure to State LIA Claim

The Court first addresses G.E.'s contention that Roth has failed to establish a claim under the LIA because the regulation she cites does not apply to the locomotive at issue or to welds, and because Roth has offered insufficient evidence of a regulatory violation. Even if the design regulation Roth cites does not apply to the locomotive in this case, once any part or appurtenance is attached to a locomotive, the LIA requires the railroad to maintain it in good repair at all times. *Herold v. Burlington Northern, Inc.*, 761 F.2d 1241, 1246 (8th Cir.1985) ("The argument that there can be no violation of the Act absent a violation of some regulation or order of [the regulatory commission] is without merit.").

G.E. next argues that Plaintiff has not offered admissible evidence to support the allegation that any welds on the locomotive were defective. The LIA imposes " 'an absolute and continuing duty' to provide safe equipment." *Richardson v. Consolidated Rail Corp.*, 17 F.3d 213, 216, 218 n. 4 (7th Cir.1994) (approving jury instruction that, "[t]here is no duty on the plaintiff to demonstrate specifically what, if anything, was wrong with the handbrake wheel," when plaintiff alleged handbrake of locomotive was not in proper condition, safe to operate) (quoting *Urie v. Thompson*, 337 U.S. 163, 188, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)). A plaintiff does not have to show that negligence caused equipment to operate improperly or unsafely; proving the improper or unsafe operation "is effective to show negligence as a matter of law." *Id.* at 216. When a part or

appurtenance of a locomotive does not perform properly, the person injured need not prove the existence of a defect. *Southern R. Co. v. Bryan,* 375 F.2d 155, 158 (5th Cir.1967) (stating principle announced in cases involving violations of federal Safety Appliance Act (SAA) applied with equal force to cases under LIA) (citing *O'Donnell v. Elgin, J. & E.R. Co.,* 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949); *Affolder v. N.Y. Ch. & St. L.R. Co.,* 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 (1950)); *accord Norfolk and Western R. Co. v. Hiles,* 516 U.S. 400, 409, 116 S.Ct. 890, 134 L.Ed.2d 34 (1996) (reaffirming that failure of equipment to perform as required is sufficient to create SAA liability, dependent on neither negligence nor proof of defect); *Grogg v. Missouri Pacific R.R. Co.,* 841 F.2d 210, 212 (8th Cir.1988) (stating that to prove train equipment violated SAA, plaintiff could show evidence either of "some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner . . . . The test in fact is the performance of the appliance") (quoting *Myers v. Reading Co.,* 331 U.S. 477, 483, 67 S.Ct. 1334, 91 L.Ed. 1615 (1947)) (cited by *Burlington Northern R.R. Co. v. Farmers Union Oil Co. of Rolla,* 207 F.3d 526, 532 (8th Cir. 2000)); *Coleman v. Burlington Northern, Inc.,* 681 F.2d 542, 544 (8th Cir.1982) (holding plaintiff did not have to show defect or "bad condition" of pinlifter device that failed to work properly under SAA; "if a pinlifter fails to operate properly and injury thereby results, liability is imposed no matter what the railroad may have done to insure its proper operation").

Roth provided evidence that the collision posts failed to perform properly, allowing the locomotive cab to collapse after the locomotive, traveling at a relatively low speed, struck an empty, stopped tank car weighing approximately 55,000 to 65,000 pounds. The Court holds that this evidence is sufficient to withstand summary judgment on Roth's claims applying LIA standards against G.E.

## C. Preemption

■■■■ G.E. asserts that the LIA preempts all of Roth's state-law claims against the company. The LIA states in part:

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts an appurtenances -

(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

(3) can withstand every test prescribed by the secretary under this chapter.

49 U.S.C. § 20701. The LIA gives the Secretary of Transportation broad authority to set compliance standards by prescribing rules and regulations for determining fitness of locomotives and their parts and appurtenances. 49 U.S.C. § 20702(a); *see Lilly v. Grand Trunk Western R. Co.,* 317 U.S. 481, 486–87, 63 S.Ct. 347, 87 L.Ed. 411 (1943) (holding use of a tender, which was covered with ice, and upon whose top an employee had to go in course of duties, was submissible jury issue under claim that the LIA had been violated, when regulatory rule required "Top of tender behind fuel space shall be kept clean and means provided to carry off waste water.") (citing *Napier v. Atlantic Coast Line R. Co.,* 272 U.S. 605, 612, 47 S.Ct. 207, 71 L.Ed. 432 (1926)). Negligence is not the basis for liability under the LIA. *Lilly,* 317 U.S. at 485, 63 S.Ct. 347. Rather, the LIA

imposes on the carrier "an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate ... without unnecessary peril to life or limb." *Id.* (citing *Southern Ry. Co. v. Lunsford,* 297 U.S. 398, 401, 56 S.Ct. 504, 80 L.Ed. 740 (1936)).

■ A court interpreting a federal statute relating to a subject traditionally governed by state law is reluctant to find preemption. *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Whether federal law preempts a state action poses a question of congressional intent. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137–38, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Congress' intention in passing the LIA was to occupy the entire field of regulating locomotive equipment, preempting state-law claims. *Napier,* 272 U.S. at 613, 47 S.Ct. 207 (distinguishing LIA from SAA, which did not occupy the entire field); *accord Urie,* 337 U.S. at 192, 69 S.Ct. 1018.

■ The LIA's preemption has a broad scope, extending to the "design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Napier,* 272 U.S. at 611, 613, 47 S.Ct. 207. The preemption occurs even when the state requirement is assumed to be a proper exercise of the state's police power and no physical conflict exists between the state's requirements and those prescribed by Congress or the Secretary of Transportation. *Id.* At 610–11. A state may not impose liability for failure to install a part or attachment of a locomotive if it is "within the scope of the authority of the [Secretary]" to prescribe the same part or attachment, even if the Secretary has not prescribed a rule or made any other requirement inconsistent with the state legislation. *Id.* at 611, 613,

47 S.Ct. 207 (holding LIA preempted state laws prescribing automatic door to firebox and cab curtain, even though no federal rule had been promulgated relating to fireboxes and cab curtains). Preemption precludes state requirements no matter how commendable their purpose. *Id.* At 613. The LIA's preemption of state law promotes the goal of nationwide uniformity of standards. *See Oglesby v. Delware & Hudson Ry.,* 180 F.3d 458, 461 (2nd Cir.), *cert. denied,* 528 U.S. 1004, 120 S.Ct. 498, 145 L.Ed.2d 384 (1999); *Law v. General Motors Corp.,* 114 F.3d 908, 910–11(9th Cir.1997).

■ Any employee engaged in interstate commerce who is injured through a violation of the LIA may bring an action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.,* charging a violation of the LIA. *Lilly,* 317 U.S. at 485, 63 S.Ct. 347. The LIA and the SAA are regarded as amendments to FELA, supplementing FELA to provide additional public protection and facilitate employee recovery. *Urie,* 337 U.S. at 189, 191, 69 S.Ct. 1018. In a FELA suit, a plaintiff need not prove that violation of the LIA constitutes negligence, and FELA bars pleadings of contributory negligence and assumption of the risk. *Id.* at 188–89, 69 S.Ct. 1018.

Roth contends state tort claims against manufacturers are not preempted by the LIA because the Act does not apply to such claims, in that the Secretary of Transportation has not prescribed a regulation concerning the tort liability of manufacturers of locomotive parts or appurtenances. The majority of courts that have addressed the issue have held that the LIA preempts state common-law tort actions against manufacturers for claims relating to the design and construction of a locomotive's parts. *See Oglesby,* 180 F.3d at 462 (holding LIA preempted common-

law action against manufacturer of locomotive's seat cab for defective design and manufacture, breach of warranty, and negligent failure to warn; stating Act's scope included both "design" and "construction" of a locomotive's parts, and state claims, whether raised under state statutes or common law, were preempted to keep locus of regulation at federal level and maintain LIA's goal of uniformity); *Law,* 114 F.3d at 911–12 (stating that imposing tort liability on railroad equipment manufacturers would affect design, construction, and material of locomotives by forcing manufacturers to conform to states' design and construction standards, transferring regulatory locus from Secretary of Transportation to state courts; "preemption analysis focuses not on whom the legal duty is imposed, but on whether the legal duty constitutes a state law requirement already covered by federal law") (internal quotations and citation omitted), *accord Springston v. Consolidated Rail Corp.,* 130 F.3d 241, 244 (6th Cir.1997) (holding LIA preempted state-law tort claims against manufacturer based on alleged need for extra-statutory warning devices on train); *Scheiding v. General Motors Corp.,* 22 Cal.4th 471, 93 Cal.Rptr.2d 342, 993 P.2d 996, 1003 (2000) (following *Law;* holding LIA preempted state-law defective-design and failure-to-warn claims against manufacturer), *cert. denied,* 531 U.S. 958, 121 S.Ct. 383, 148 L.Ed.2d 295 (2000). *But see Lorincie v. Southeastern Penn. Transp. Auth.,* 34 F.Supp.2d 929 (E.D.Pa.1998) (holding that LIA did not preempt state common-law claims against railroad manufacturers that were not also carriers; Act did not mention manufacturers). This Court finds persuasive the analysis of the *Oglesby* and *Law* courts and holds that the LIA applies to state common-law tort claims against manufacturers.

In support of its argument that the LIA preempts Roth's claims, G.E. cites several cases, including *Oglesby,* 180 F.3d at 461 (holding LIA preempted action by injured railroad employee against locomotive manufacturer for failure to meet standards imposed by state law); *Springston,* 130 F.3d at 245 (holding LIA preempted injured motorist's state-law claims alleging that the defendant train manufacturer was negligent for failing to equip train with certain warning devices above and beyond those devices required by federal law); *Law,* 114 F.3d at 913 (holding LIA preempted railroad employees' state common-law remedies against railroad manufacturer for injuries arising out of alleged design defect in train); *see also Forrester v. American Dieselelectric, Inc.,* 255 F.3d 1205, 1209–10 (9th Cir.2001) (holding LIA preempted non-railroad employee's products-liability action against locomotive crane manufacturer for injuries allegedly caused by crane, even though non-railroad employee did not have remedy under FELA). As Roth points out, these cases concern preemption of negligence claims based on state-law standards, not federal-law standards. Roth does not challenge the holdings of these cases, but argues her state law action is not preempted, because she seeks relief based on G.E.'s alleged failure to meet LIA standards, rather than a state-law standard. Roth cites no case law backing her argument. The Eighth Circuit has not yet ruled on this issue.

The Court has found one case addressing the issue of whether the LIA preempts state common-law claims brought by a railroad employee seeking relief based on violation of LIA standards: *Engvall v. Soo Line R.R. Co.,* 632 N.W.2d 560 (Minn. 2001). In *Engvall,* an injured locomotive engineer brought an action against the railroad under FELA. *Id.* at 563. The court held the railroad had a state-law cause of action in a third-party claim seeking contribution and indemnity against the

locomotive manufacturer, General Motors Corporation (GM). *Id.* at 571. In so holding, the court determined that Plaintiff Engvall could have brought a state common-law action of negligence *per se* against GM based on violation of the LIA. *Id.* Specifically, the court held that the field preempted by the LIA does not include state common-law actions based on violation of the LIA. *Id.*

The court stated in *Engvall* that whether "a state law falls within a preempted field is determined not only 'by reference to the purpose of the state law in question,' but also by reference to its 'actual effect,'" and "'for a state law to fall within the preempted zone, it must have some direct and substantial [rather than remote] effect' on the regulated field." *Id.* At 570 (quoting *English v. General Electric Co.,* 496 U.S. 72, 84, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (holding employee's state-law claim for intentional infliction of emotional distress was not preempted by Energy Reorganization Act)) (inclusion in citing case). The *Engvall* court found persuasive the railroad's argument that a negligence *per se* claim based on a violation of LIA would not have any direct and substantial effect on the regulated field of locomotive design, construction, and material, and thus the claim did not fall within the preempted field. *Id.* The court also noted that because no state standard was imposed, no danger existed of undermining the goal of nationwide uniformity of railroad operating standards. *Id.* at 570–71.

This Court respectfully disagrees that *English* supports a finding that a state negligence *per se* claim based on a violation of LIA would not have any direct and substantial effect on the LIA's regulated field. In discussing a state law's actual effect on a regulated field, the *English* Court stated, "The real issue, then, is whether petitioner's tort claim is so related

to the [subject matter regulated] that it falls within the pre-empted field," bearing in mind that "not every state law that in some remote way may affect the nuclear safety decisions made by those who build and run nuclear facilities can be said to fall within the pre-empted field." *English,* 496 U.S. at 84–85, 110 S.Ct. 2270 (alteration added) (internal citation omitted). Any claim, whether state or federal, based on LIA standards would necessarily affect the locomotive design, construction, and material decisions made by railroads. Roth's tort claim is thus so related to relevant aspects of regulation of locomotives that it falls within the preempted field. *See id.* at 84–85, 110 S.Ct. 2270.

The *Engvall* court cited *Crane v. Cedar Rapids & I.C. Ry.,* 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969), in support of the proposition that a party suing for violation of the LIA must do so under a common law action. *Engvall,* 632 N.W.2d at 568; *see also Steffey v. Soo Line R.R. Co.,* 498 N.W.2d 304, 307 (Minn.Ct.App.1993). *Crane,* however, addresses only causes of action under the SAA, and does not mention the LIA. *See Crane,* 395 U.S. at 166, 89 S.Ct. 1706 (stating non-railroad employee must look for his remedy for SAA violation to common-law tort action in state court). As noted above, the SAA does not have the broad preemptive effect that the LIA has. *See Napier,* 272 U.S. at 611, 613, 47 S.Ct. 207. Furthermore, the Court in *Crane* distinguished between railroad employees, who have a federal cause of action under FELA, and non-railroad employees, who have no federal cause of action available. *See Crane,* 395 U.S. at 166, 89 S.Ct. 1706 ("the nonemployee must look for his remedy to a common law action in tort").

■ Roth asserts that because she bases her claims against G.E. on LIA standards, any resultant state-law ruling

would not conflict with the LIA. When Congress intends a statute to have a broad preemptive effect, however, preemption is not precluded "simply because a state law is consistent" with the statute's substantive requirements. *Ingersoll–Rand*, 498 U.S. at 139, 111 S.Ct. 478 (discussing preemption under Employee Retirement Income Security Act of 1974 (ERISA)); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 738, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (it is "irrelevant whether State law dictating plan benefits conflicts with substantive policies of ERISA"); *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386–87, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (stating nothing in Airline Deregulation Act suggested preemption was limited to inconsistent state regulation, citing ERISA cases).

 In cases involving the SAA, some courts look to their state's common law to determine whether a non-railroad employee may file a cause of action based on a violation of the SAA. *See Magna Trust Co. v. Illinois Central R.R. Co.*, 313 Ill.App.3d 375, 245 Ill.Dec. 715, 728 N.E.2d 797, 803 (App.Ill.2000) (discussing different standards in different state courts, noting that in *Moses v. Union Pacific R.R.*, 64 F.3d 413, 417 (8th Cir.1995), court applied Kansas law and held that in state tort action, violation of SAA could be offered as evidence of negligence, while in some states breach of safety statute constituted negligence *per se* ). In Iowa, a negligence suit based on violation of a safety statute may be actionable as negligence *per se. Wiersgalla v. Garrett*, 486 N.W.2d 290, 292 (Iowa 1992). A defendant in Iowa may, however, escape liability by establishing a legal excuse for failure to observe the statute's requirements. *Jorgensen v. Horton*, 206 N.W.2d 100, 102 (Iowa 1973); *Kisling v. Thierman*, 214 Iowa 911, 243 N.W. 552, 554 (Iowa 1932); *see Weiss v. Bal*, 501

N.W.2d 478, 481 (Iowa 1993). A legal excuse may include anything that would make it impossible to comply with the statute. *Kisling*, 243 N.W. at 554; *see Meyer v. City of Des Moines*, 475 N.W.2d 181, 186 (Iowa 1991) (stating "impossible" as used in legal-excuse doctrine should not be given a narrow, literal construction; "impossible" was construed to mean "not reasonably practicable"). These varying state standards for liability indicate increased chances of inconsistent laws concerning federal regulations if the LIA is not given preemptive effect. A federal court has held a non-railroad employee could not proceed with a state common-law tort claim on the ground that the manufacturer failed to comply with SAA standards. *Ouellette v. Union Tank Car Co.*, 902 F.Supp. 5, 10–11 (D.Mass.1995) (stating, "manufacturers would inevitably be subjected to varying interpretations of the federal regulations in the different states . . . . Inevitably, these tort actions would generate precisely those inconsistencies in railroad safety standards that Congressional action was intended to avoid.").

The Court notes that non-railroad employees have brought suits based on a violation of the LIA under state common-law tort theories. *See Brown v. Chicago, R.I. & P.R. Co.*, 108 F.Supp. 164, 168 (N.D.Iowa 1952) (holding that regulation under authority of LIA fixed the duty owed by defendant to plaintiff's intestate regarding locomotive headlight illumination); *Steffey*, 498 N.W.2d at 307 (stating that while under FELA a railroad had absolute liability for employee's injury caused by violation of laws or regulations promulgated under LIA and SAA, "a non-employee who brings suit based on a violation of either safety act must sue in a state court under common-law tort theories") (citing *Crane*, 395 U.S. at 166, 89 S.Ct. 1706). Unlike the plaintiffs in *Brown* and *Steffey*, however, Arnold Roth was a rail-

road employee, and here a federal cause of action under FELA exists. *See generally Moses,* 64 F.3d at 419 (affirming district court's dismissal of milling company employee's claim under SAA against railroad, noting SAA did not create independent cause of action for injured parties, and stating that while railroad employees have cause of action under FELA, nonemployee must look for his remedy to a common-law action in tort, in which a violation of SAA may be offered as evidence of negligence). The fact that some non-railroad employees have brought state common-law actions based on violations of LIA standards does not mean that railroad employees can bring similar actions. As discussed above, railroad employees, unlike non-railroad employees, have a federal cause of action for their claims of LIA violations. If Congress had intended for the broad sweep of LIA preemption to allow state actions by railroad employees, it could have amended the statute to reflect that intention.

The Eighth Circuit, in a case concerning the Virus–Serum–Toxin Act (VSTA), faced the issue of whether state common-law claims were preempted to the extent that they sought relief for alleged violations of the federal substantive standards. *Symens v. SmithKline Beecham Corp.,* 152 F.3d 1050, 1055 (8th Cir.1998). The court noted that VSTA conferred no federal right of action on those who might be injured by animal vaccines that were unlicenced, defective, or mislabeled. *Id.* at 1055. Thus, a holding of total preemption of state common-law remedies would leave vaccine purchasers and users without any remedy, "a preemptive intent we should be most reluctant to infer." *Id.* Furthermore, "strong evidence" of the agency's intent not to entirely preempt common-law remedies came from the agency's decision to leave in place a regulation prohibiting licensed manufacturers from publishing "disclaimers of merchantability, fitness for

the purpose offered, or responsibility for the product," which was "an express recognition" that state common-law remedies were not entirely preempted. *Id.* Under these circumstances, the court held that common-law claims were not preempted to the extent that they sought relief for alleged violation of the federal substantive standards. *Id.* The court cited Justice Breyer's concurring opinion in *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 508, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), which stated that a state-law tort suit is not preempted if its "liability-creating-premises" do not conflict with federal requirements. *Id.* at 1055 n. 1.

In this case, unlike in *Symens,* Roth has a remedy available through FELA, and in fact included a FELA claim in her suit. *See Ingersoll–Rand,* 498 U.S. at 144, 111 S.Ct. 478 ("The six carefully strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.") (citation omitted). Furthermore, nothing in the LIA evidences Congress' intent not to entirely preempt common-law remedies for railroad employees. The *Crane* Court expressly found common-law remedies only for non-railroad employees under the SAA. *Crane,* 395 U.S. at 166, 89 S.Ct. 1706. Finally, as indicated above, states' various liability-creating-premises in common-law claims based on violations of safety statutes can, in some instances, create non-uniform results and conflict with federal requirements for enforcement of the LIA under FELA. *Cf. Ouellette,* 902 F.Supp. at 10. The circumstances in this case are sufficient to overcome the presumption against preemption. *See CSX Transp.,* 507 U.S. at 664, 113 S.Ct. 1732.

Viewing the facts in the light most favorable to Roth, the Court holds that no material question of fact exists, and General Electric Company and General Electric

Transportation System are entitled to summary judgment on Roth's claims against them.

## IV. CONCLUSION

For the reasons discussed above, the Court holds that defendants' motion for summary judgment, (Clerk's No. 43) is **granted,** and the claims against Defendants General Electric Company and General Electric Transportation System are dismissed.

IT IS SO ORDERED.